```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/2/17
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
BENJAMIN MICHAEL MERRYMAN, AMY            :
WHITAKER MERRYMAN TRUST, and B            :
MERRYMAN AND A MERRYMAN 4TH               :
GENERATION REMAINDER TRUST,               :     15-CV-9188 (VEC)
individually and on behalf of all others similarly :
situated,                                 :     MEMORANDUM
                              Plaintiffs, :     OPINION & ORDER
                                          :
            -against-                     :
                                          :
J.P. MORGAN CHASE BANK, N.A.,             :
                                          :
                              Defendant.  :
-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

Plaintiffs Benjamin Michael Merryman, Amy Whitaker Merryman Trust, and B Berryman and A Merryman 4th Generation Remainder Trust, on behalf of themselves and all others similarly situated, bring this breach of contract action against J.P. Morgan Chase Bank, N.A. ("JPM"). Plaintiffs, owners of American Depositary Receipts ("ADRs") held on deposit by JPM, claim that JPM collected impermissible "fees" when converting foreign currency-denominated cash distributions into U.S. dollars before distributing the cash to Plaintiffs.[1] Plaintiffs allege that JPM converted the distributions to U.S. dollars at a rate more favorable than the rate at which the distributions were ultimately paid to Plaintiffs, thereby retaining a "fee" that was not permitted under the ADR contractual agreements.

---

[1] At times the parties refer to the fee as a "spread." The Court will adopt the parties' approach and use the terms "fee" and "spread" interchangeably. It remains to be decided in later phases of this litigation whether the existence of a "spread" between the rate at which JPM converts foreign currency to U.S. dollars and the rate at which it pays in U.S. dollars distributions received in foreign currency can fairly be characterized as a "fee."

The Court assumes the parties' familiarity with the facts of the case and directs readers to its prior opinion. *See Merryman v. J.P. Morgan Chase Bank, N.A.*, No. 15-CV-9188 (VEC), 2016 WL 5477776 (S.D.N.Y. Sept. 29, 2016).

JPM previously filed a motion to dismiss the Complaint, which was granted in part and denied in part. Dkt. 35. Plaintiffs now move pursuant to Federal Rule of Civil Procedure 60(b) and Local Rule 6.3 for partial reconsideration of the Court's decision granting in part the motion to dismiss, specifically the Court's rulings that (1) Plaintiffs do not have class standing to represents investors who owned ADRs other than those owned by Plaintiffs, and (2) Plaintiffs' claims predating November 21, 2010 are time-barred.[2] For the following reasons, Plaintiffs' motion is DENIED.

## DISCUSSION

### I.  Legal Standard

"A motion for reconsideration should be granted only when the defendant identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)); *see also Rafter v. Liddle*, 288 F. App'x 768, 769 (2d Cir. 2008) ("The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995))). These requirements are not to be taken lightly; "[t]he Second Circuit has instructed that Rule

---

[2]  While this motion was pending, Plaintiffs filed an amended complaint, adding an additional Plaintiff, who owned ADRs not owned by the original Plaintiffs. Dkt. 55. JPM has moved to dismiss the amended complaint, Dkt. 59, and the parties are in the midst of briefing that motion.

60(b) provides 'extraordinary judicial relief' and can be granted 'only upon a showing of exceptional circumstances.'" *Kubicek v. Westchester Cnty.*, No. 08–CV–372 (ER), 2014 WL 4898479, at * 1 (S.D.N.Y. Sept. 30, 2014) (quoting *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986)). The standard for reconsideration is strict to "prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." *Jackson v. Odenat*, 9 F. Supp. 3d 342, 368 (S.D.N.Y. 2014) (internal quotation omitted). As the Second Circuit has stated, motions for reconsideration "are not vehicles for taking a second bite at the apple . . . ." *Rafter*, 288 F. App'x at 769 (internal quotation and citation omitted).

## II. Plaintiffs' Motion to Reconsider the Court's Ruling on Class Standing Is Denied

The Court previously held that Plaintiffs do not have class standing to represent holders of ADRs sponsored by JPM in which Plaintiffs did not invest. The Court, analogizing to *Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of N.Y. Mellon*, 775 F.3d 154 (2d Cir. 2014) ("*BNY Mellon*"), concluded that Plaintiffs' claims do not present the same set of concerns as the claims of those absent class members because, to succeed on their breach of contract claims, Plaintiffs will need to prove (1) that JPM added a spread to the distributions for each ADR, and (2) that the spread was an impermissible fee under the terms of the relevant ADR contract. *See Merryman*, 2016 WL 5477776, at *13-15. The Court also concluded that Plaintiffs did not show that they have a "personal and concrete stake" in proving that JPM breached ADR contracts for ADRs that Plaintiffs do not own, which is a "core question" in class standing analysis. *Id.* at *14 (citing *BNY Mellon*, 775 F.3d at 163).

Plaintiffs argue that the Court committed clear error by denying class standing. Plaintiffs contend that the Court overlooked JPM's 2012 disclosure that it charges a fee on ADR distributions, which Plaintiffs characterize as an "admission." According to Plaintiffs, JPM's

2012 disclosure establishes that JPM engaged in a common practice of charging a fee to ADR holders on each ADR distribution. Pls. Mem. 8 (Dkt. 40). Therefore, they argue, the Court was wrong to conclude that Plaintiffs will need to prove that JPM added a spread to the distributions for each ADR, and Plaintiffs have adequately alleged that Plaintiffs' claims raise the same set of concerns as the claims of the absent class members who owned ADRs not owned by Plaintiffs.[3] *Id.* at 8-9.

Plaintiffs rely much too heavily on the 2012 disclosure. The 2012 disclosure is not necessarily an admission by JPM that it adds a fee to every ADR distribution, let alone an admission that JPM adds a fee that is impermissible under the terms of each ADR. The disclosure states that "[t]he Final Foreign Exchange Rate will be net of . . . a fee of up to 20 basis points . . . ." Compl. ¶ 48 (Dkt. 1). The statement that JPM may charge a fee of "up to 20 basis points" leaves open the possibility that JPM may not have charged a fee on all distributions. The graph in Plaintiffs' Complaint, *see id.* ¶¶ 6, 39, is consistent with that possibility. Although Plaintiffs may be correct that even when the "assigned FX rate" (i.e., the foreign exchange rate at which ADR holders were paid) was above the daily median interbank FX rate, JPM added a spread to those distributions, the graph neither supports nor undercuts that notion. An equally plausible interpretation is that JPM did not always add a spread when assigning the FX rate to an

---

[3]  Plaintiffs did not previously raise this specific argument regarding the 2012 disclosure. *See* Pls. MTD Opp. 13-15 (Dkt. 24). Plaintiffs cite to their opposition to the motion to dismiss, claiming that they did point to the disclosure when making their class standing argument at the motion to dismiss stage, *see* Pls. Reply n.3 (Dkt. 48), but Plaintiffs' opposition to JPM's motion to dismiss neither discussed the role of the disclosure in establishing class standing nor cited to the portions of the Complaint that discussed the disclosure, *see* Pls. MTD Opp. 14-15 (citing Compl. ¶¶ 35-45). "[A] motion for reconsideration cannot assert new arguments or claims which were not before the court on the original motion and consequently cannot be said to have been *considered*." *Koehler v. Bank of Bermuda Ltd.*, No. M18-302 (CSH), 2005 WL 1119371, at *1 (S.D.N.Y. May 10, 2005) (emphasis in original). Although "[t]he submission of new arguments or claims generally results in a denial of [a motion for reconsideration]," *Image Processing Techs., LLC v. Canon Inc.*, No. CV 10-3867 (SJF) (ETB), 2012 WL 253097, at *2 (E.D.N.Y. Jan. 26, 2012), the Court will consider Plaintiffs' belated argument.

ADR distribution.[4] Regardless of the various ways to interpret Plaintiffs' graph (and assuming all of its inputs are accurate), in order to succeed on the merits of their breach of contract claims, Plaintiffs will have to prove that JPM added a fee when assigning the FX rate for each ADR distribution, and the 2012 disclosure standing alone does not accomplish that.

As explained in the Court's earlier decision, Plaintiffs will also need to prove that any fee that was charged was impermissible under the terms of the ADR contracts.[5] Although Plaintiffs repeatedly argue that the 2012 disclosure establishes liability for breach of contract,[6] the Court disagrees. But even if the 2012 disclosure were an admission that JPM adds a fee to the assigned FX rate for every ADR distribution, Plaintiffs must still prove that such a fee was impermissible under the terms of the particular ADR contract at issue, which will require proof and analysis of the terms of each ADR contract.[7]

---

[4] With respect to the graph, Plaintiffs also argue that the Court conflated liability and damages when it concluded that Plaintiffs will need to introduce evidence regarding each distribution for each ADR because there was no uniform pattern of adding a spread. Pls. Mem. 11. According to Plaintiffs, the Court's reasoning was improper because the fact that damages may need to be ascertained on an individual basis does not defeat class standing. *Id.* (citing *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 164-64 (2d Cir. 2012)). While that legal principle is true, the Court did not deny class standing on the basis that damages may need to be calculated individually. Instead, the Court focused on the variation of the assigned FX rate—which was sometimes more favorable than the median daily interbank rate—because it suggests that, in some instances, JPM may not have added a spread *at all*, in which case there would be no breach of contract even under Plaintiffs' interpretation. For that reason, to prove liability, Plaintiffs will be required to introduce evidence regarding each distribution for each ADR.

[5] Also noted in the Court's prior decision, Plaintiffs will need to prove that the alleged fee is something other than part of the price of the foreign currency. *See Merryman*, 2016 WL 5477776, at n.20 (citing *Louisiana Mun. Police Employees' Ret. Sys. v. JPMorgan Chase & Co.*, No. 12 CIV. 6659 (DLC), 2013 WL 3357173, at *8, 9-11 (S.D.N.Y. July 3, 2013)).

[6] *See* Pls. Mem. 2 ("JPM's admitted, common practice of charging an impermissible fee"), 7 ("JPM's 2012 admission establishes the conduct that gives rise to its liability"), 8-9 ("The Disclosure independently establishes that JPM engaged in a common practice of charging impermissible fees"), 13 ("The Disclosure not only establishes a common practice by JPM, but this common practice ***on its own constitutes a breach***" (emphasis in original); *see also* Pls. Reply 3 ("the Disclosure, if properly considered, establishes that common evidence of liability will apply to Plaintiffs and all ADR holders").

[7] Although at times Plaintiffs make conclusory statements that the 2012 disclosure establishes liability, as discussed in note 6 *supra*, Plaintiffs at other times seem less confident that the disclosure alone proves breach of contract: "[i]f, consistent with the Disclosure, JPM engaged in a common practice of adding an impermissible fee to

5

A preliminary review of Plaintiffs' ADR contracts shows that they are not sufficiently similar so that proving that an FX conversion fee was impermissible under the terms of one ADR contract will necessarily prove a breach of contract under the terms of every other ADR contract. Plaintiffs contend that the Court's finding that the relevant portions of Plaintiffs' ADR contracts are sufficiently similar for purposes of alleging a breach of contract claim as to all of Plaintiffs' ADRs means that all JPM-sponsored ADR contracts are substantially similar for the purpose of alleging class standing. *See* Pls. Reply 5, 6. But the Court's finding relative to the adequacy of Plaintiffs' complaint as to their twelve ADR contracts does not mean that *all* JPM-sponsored contracts are sufficiently similar to give Plaintiffs class standing. Plaintiffs are confusing what is required plausibly to *allege* breach of contract with what is required successfully to *prove* breach of contract. The relevant terms of the contracts for the twelve ADRs held by Plaintiffs are sufficiently comparable so that Plaintiffs' breach of contract allegation applies to all twelve ADR contracts. Because, however, the contracts are far from identical, to succeed on the merits Plaintiffs will have to prove the terms of each ADR Contract and will have to prove that JPM did something that breached the contract terms for each particular ADR.

A brief comparison of the "charges of the depository" provision, which is one of the contractual provisions key to Plaintiffs' breach of contract claims, reveals noteworthy differences in the terms of the different ADR contracts. That provision of the Sanofi-Avantis ADR contract provides, in part, that ADR owners or holders shall incur the following "charge:" "in connection with the conversion of foreign currency into U.S. dollars, [JPM] shall deduct out of such foreign currency the fees, expenses and other charges charged by it and/or its agent (which may be a division, branch or affiliate) so appointed in connection with such conversion. . . ." Compl.

---

all Cash Distributions, then Plaintiffs have established liability as to both the ADRs they purchased and the ADRs they did not purchase," Pls. Mem. 13.

Ex. 29 § 5.9 (Dkt. 1-30).  On the other hand, the same provision in the Guangshen Railway Company Limited ADR contract provides, in part, that ADR holders may incur "a fee of U.S. $0.02 or less per ADS for any Cash distribution made pursuant to the Deposit Agreement" and "an aggregate fee of U.S. $0.02 per ADS per calendar year . . . for services performed by the Depositary in administering the ADRs (which fee . . . shall be payable . . . by deducting such charge from one or more cash dividends or other cash distributions) . . . ." *Id.* Ex. 12, at Exhibit A to Deposit Agreement § 7 (Dkt. 1-12).  That provision continues, stating, *inter alia*, that "[t]he Company will pay all other charges and expenses of the Depositary except" fees, expenses, and charges incurred in connection with foreign exchange; this latter part of the Guangshen contract is identical to the Sanofi-Avontis provision quoted above, except that it is framed so that Guangshen (the Company) will not pay foreign exchange charges, while the Sanofi-Avontis provision explicitly states that the ADR holders will pay foreign exchange charges.  *Id.*  The relevant provision in the Banco de Santander ADR contract only specifically designates the "Delivery of Receipts against deposits of Shares" and "Withdrawal of Deposited Securities against surrender of Receipts" as depositary charges to be paid by ADR holders and provides that Banco de Santander will pay all other depositary charges except, *inter alia*, "charges of the Depositary in connection with the conversion of foreign currency into U.S. dollars (which are paid out of such foreign currency)."  *Id.* Ex. 1, at Exhibit B to Deposit Agreement (Dkt. 1-1). The differences in just this small sample of contractual provisions show that ADR holders may be responsible for different fees, expenses, or charges depending on the ADR, which will affect Plaintiffs' breach of contract claims.[8]

---

[8]  In addition, some ADR contracts include arbitration clauses, *see Merryman*, 2016 WL 5477776, at *15-16, some include language that may bar contractual standing, *see id.* at *6-7, and some may include jury waivers, *see* Def. Opp. 11 (Dkt. 43).  These contractual differences also necessitate a contract-by-contract analysis in order for Plaintiffs to succeed on their claims.

In short, the 2012 disclosure does not relieve Plaintiffs of their burden to prove that JPM added a spread to the distributions for a particular ADR and that the spread was impermissible under the terms of that particular ADR in order for Plaintiffs to succeed on their breach of contract claims. Given the variation in the contract terms and the assigned FX rates, proving that JPM added a fee to the assigned FX rate for one ADR's distributions and that the fee was impermissible under the terms of that ADR contract would not tend to prove that JPM charged an impermissible fee on the distributions of another ADR. *Cf. BNY Mellon*, 775 F.3d at 161-62. It is for that reason that this case is more like *BNY Mellon* than *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012), as discussed in the Court's prior decision, *Merryman*, 2016 WL 5477776, at *13-15. Moreover, Plaintiffs still have not shown that they have a "personal and concrete stake" in proving that JPM breached contracts for ADRs not held by Plaintiffs, *BNY Mellon*, 775 F.3d at 163, despite their argument that they do not need "an expanded evidentiary showing" to prove their claims because of JPM's "common practice of adding an impermissible fee," Pls. Mem. 13—an argument the Court has now rejected for a second time.[9]

### III. Plaintiffs May Not Raise a New Tolling Argument in a Motion for Reconsideration

In its prior opinion resolving JPM's motion to dismiss, the Court held that Arkansas's five-year statute of limitations for breach of contract claims, Ark. Code Ann. § 16-56-111(a), governed pursuant to New York's borrowing statute, N.Y. C.P.L.R. §213(2). *Merryman*, 2016

---

[9] Plaintiffs discuss two nearly identical ongoing ADR breach of contract cases in which the class standing issue was deferred to the class certification stage. Pls. Mem. 4-5 (citing *Norman v. Bank of New York Mellon*, 2016 WL 5477783 (S.D.N.Y. Sept. 29, 2016) and *Merryman et al. v. Citigroup et al.*, No. 15-CV-9185 (CM) (S.D.N.Y. Aug. 15, 2016)). In light of the Court's analysis above regarding the contractual provisions and the alleged facts, those decisions do not change the Court's class standing ruling.

WL 5477776, at *10. Plaintiffs filed their initial complaint in this action on November 21, 2015, making the cutoff for the limitations period November 21, 2010. The Court refused to toll the five-year limitations period on the basis of alleged fraudulent concealment and held that Plaintiffs' breach of contract claims arising prior to November 21, 2010, were dismissed as time-barred. *Id.* at *10-11.

Plaintiffs now contend that the Court committed a clear error of law in using the date of Plaintiffs' New York complaint to calculate the applicable limitations period. Pls. Mem. 14. Instead, according to Plaintiffs, the Court should have measured the limitations period from May 1, 2015, the date Plaintiffs filed their complaint in the Western District of Arkansas. *Id.* at 15-16. (That complaint was dismissed on November 19, 2015, for lack of personal jurisdiction. *Id.*). Adopting this approach would extend the limitations period by approximately six months—from November 21, 2010, to May 1, 2010. Plaintiffs argue that the Arkansas savings statute tolls the applicable limitations period from the date of the first filed complaint, which here is the Arkansas complaint. *Id.* at 15. Plaintiffs may well be correct that under Arkansas's savings statute the limitations period should start on the day the Arkansas complaint was filed. *See Chandler v. Roy*, 272 F.3d 1057, 1058-59 (8th Cir. 2001).

Nevertheless, because Plaintiffs failed to raise this tolling argument previously, they are precluded from raising it on a motion to reconsider. A motion for reconsideration is "no[t] an opportunity for making new arguments that could have been previously advanced," and "a party is barred from making for the first time in a motion for reconsideration an argument it could readily have raised when the underlying issue was being briefed but chose not to do so." *Associated Press v. U.S. Dep't of Def.*, 395 F. Supp. 2d 17, 19, 20 (S.D.N.Y. 2005). Plaintiffs

could have—and should have—raised the savings statute argument in responding to JPM's motion to dismiss.

Plaintiffs contend that they were not obligated to raise this argument earlier because the parties were exclusively litigating whether Plaintiffs had adequately alleged fraudulent concealment in order to toll the statute of limitations. Pls. Reply. 8. Although it is true that JPM focused its argument on the inadequacy of Plaintiffs' fraudulent concealment allegations, Plaintiffs had to have known that if they lost that argument, a limitations date other than the one they were advocating would have to be set. Contrary to Plaintiffs' representation in their motion for reconsideration, it was not clear from the parties' briefing that they believed that the Arkansas statute of limitations applied, inasmuch as both parties relied on both New York and Arkansas law in their statute of limitations arguments. *See* Def. MTD Mem. 28-29 (Dkt. 20); Pls. MTD Opp. 20-22; Def. MTD Reply 14-15 (Dkt. 26).

"Because [JPM] raised a statute of limitations as a defense in [its] motion to dismiss, the burden shifted to [Plaintiffs] to prove by a preponderance of the evidence that the limitations period was tolled by the savings statute." *Early v. Baker*, 2013 Ark. 511, 4 (2013). Plaintiffs, therefore, should have argued at the motion to dismiss stage that if the Court rejected their fraudulent concealment argument, the Arkansas savings statute tolled the limitations period from the filing of the complaint in Arkansas.[10] Plaintiffs cannot now raise this new tolling argument on a motion for reconsideration. *See Quality Cleaning Prod. R.C., Inc. v. SCA Tissue N. Am., LLC*, 794 F.3d 200, 208 (1st Cir. 2015) (affirming denial of motion for reconsideration on the basis that the party raised a discovery rule argument for the first time on its motion for

---

10    During oral argument, the Court pressed Plaintiffs on their fraudulent concealment argument. Even at that point, knowing fraudulent concealment was in jeopardy, Plaintiffs did not raise the Arkansas savings statute as another means of tolling the statute. *See* August 30, 2016 Oral Argument Tr. 31-36, 40-46 (Dkt. 33).

reconsideration); *Chepilko v. Cigna Life Ins. Co. of N.Y.*, 952 F. Supp. 2d 629, 631 (S.D.N.Y. 2013) (holding that a statute of limitations tolling argument raised for the first time on a motion for reconsideration is not a basis for reconsidering the Court's prior opinion); *Grullon v. Reid*, No. 97 CIV. 7616 (RWS), 2000 WL 648891, at *2 (S.D.N.Y. May 19, 2000) (stating that an equitable tolling argument cannot be raised for the first time on a motion for reconsideration), *aff'd sub nom. Grullon v. United States*, 22 F. App'x 70 (2d Cir. 2001).

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for partial reconsideration is DENIED. The Clerk of Court is respectfully directed to close docket entry 39.

**SO ORDERED.**

**Date: February 2, 2017**  **VALERIE CAPRONI**
**New York, New York**  **United States District Judge**