# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BENJAMIN MICHAEL MERRYMAN, AMY WHITAKER MERRYMAN TRUST, B MERRYMAN AND A MERRYMAN 4TH GENERATION REMAINDER TRUST AND CHESTER COUNTY EMPLOYEES RETIREMENT FUND, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>Defendant. | CIVIL ACTION NO. 1:15-cv-09188-VEC |

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ........................................................................................1

II. NATURE AND PROCEDURAL BACKGROUND OF THE LITIGATION ...................3

III. ARGUMENT ...................................................................................................................6

    A.    The Proposed Settlement Warrants Preliminary Approval.......................................6

    B.    The Settlement Occurred After Good Faith, Arm's-Length Negotiations
        Conducted By Well-Informed And Experienced Counsel........................................8

    C.    The Substantial Benefits For The Settlement Class, Weighed Against
        Litigation Risks, Support Preliminary Approval ....................................................9

        1.    The Complexity, Expense and Likely Duration of the Litigation ............10

        2.    The Litigation Risks, Including the Risks of Establishing Liability
            and Damages ............................................................................................10

        3.    The Range of Reasonableness of the Settlement in Light of the
            Best Possible Recovery and the Attendant Risks of Litigation ................12

IV. CERTIFICATION OF THE SETTLEMENT CLASS FOR SETTLEMENT
    PURPOSES IS APPROPRIATE ....................................................................................13

    A.    The Settlement Class Satisfies The Requirements Of Rule 23(a) .......................14

        1.    The Proposed Settlement Class is Sufficiently Numerous .......................15

        2.    Common Questions of Law and Fact Bind the Settlement Class .............15

        3.    Plaintiffs' Claims are Typical of Those of the Settlement Class .............16

        4.    Plaintiffs and Lead Counsel are Adequate Representatives of the
            Settlement Class .......................................................................................17

    B.    The Settlement Class Satisfies The Requirements Of Rule 23(b)(3) ...................18

        1.    Common Legal and Factual Questions Predominate over Any
            Individual Issues ......................................................................................19

        2.    A Class Action is Superior to Other Methods of Adjudication ................20

V. THE COURT SHOULD APPROVE THE FORM, CONTENT, AND METHOD
    FOR DISSEMINATING NOTICE TO THE SETTLEMENT CLASS ...........................21

VI.    THE COURT SHOULD ADOPT THE PROPOSED SCHEDULE..................................24

VII.   CONCLUSION.............................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
   293 F.R.D. 459 (S.D.N.Y. 2013) ............................................................6

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
   689 F.3d 229 (2d Cir. 2012)................................................................19

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997).................................................................14, 20

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013).................................................................18

*Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*,
   692 F.3d 42 (2d Cir. 2012).................................................................11

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
   2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) .........................................12

*Butler v. Sears, Roebuck & Co.*,
   727 F.3d 796 (7th Cir. 2013) ...............................................................19

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed
   Care, L.L.C.*,
   504 F.3d 229 (2d Cir. 2007)................................................................16

*In re Citigroup Inc. Bond Litig.*,
   296 F.R.D. 147 (S.D.N.Y. 2013) ............................................................6

*City of Providence v. Aeropostale, Inc.*,
   2014 WL 1883494 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v.
   Pierson*, 607 F. App'x 73 (2d Cir. 2015)................................................9, 12, 23

*Clark v. Ecolab, Inc.*,
   2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009)..........................................7

*Clem v. Keybank, N.A.*,
   2014 WL 1265909 (S.D.N.Y. Mar. 27, 2014) .........................................7

*Cohen v. J.P. Morgan Chase & Co.*,
   262 F.R.D. 153 (E.D.N.Y. 2009)............................................................7

*Consol. Rail Corp. v. Town of Hyde Park*,
   47 F.3d 473 (2d Cir. 1995)................................................................15

*Damassia v. Duane Reade, Inc.*,
   250 F.R.D. 152 (S.D.N.Y. 2008) ...........................................................................18

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006)..................................................................................14

*Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) *abrogated by other grounds by Goldberger v.*
   *Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ...............................................9, 12

*Dial Corp. v. News Corp.*,
   317 F.R.D. 426 (S.D.N.Y. 2016) .............................................................................8

*In re Drexel Burnham Lambert Grp., Inc.*,
   960 F.2d 285 (2d Cir. 1992)..................................................................................17

*In re Elec. Books Antitrust Litig.*,
   2014 WL 1282293 (S.D.N.Y. Mar. 28, 2014) ........................................................17

*Eternity Global Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*,
   375 F.3d 168 (2d Cir. 2004)..................................................................................11

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
   2007 WL 2230177 (S.D.N.Y. July 27, 2007) .........................................................20

*Glatt v. Fox Searchlight Pictures Inc.*,
   293 F.R.D. 516 (S.D.N.Y. 2013) ...........................................................................15

*In re IMAX Sec. Litig.*,
   283 F.R.D. 178 (S.D.N.Y. 2012) .........................................................................6, 14

*In re IndyMac Mortg.-Backed Sec. Litig.*,
   286 F.R.D. 226 (S.D.N.Y. 2012) ...............................................................15, 19, 20

*In re Initial Pub. Offering Sec. Litig.*,
   243 F.R.D. 79 (S.D.N.Y. 2007) ..............................................................................7

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
   2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) .................................................. 16-17

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) .............................................................................8

*In re Nat. Gas Commod. Litig.*,
   231 F.R.D. 171 (S.D.N.Y. 2005) ...................................................................... 15-16

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972)..................................................................................12

*In re PaineWebber Ltd. P'Ships, Litig.*
  171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd* 117 F.3d 721 (2d Cir. 1997)......................................12

*In re Platinum & Palladium Commod. Litig.,*
  2014 WL 3500655 (S.D.N.Y. Jul. 15, 2014) ........................................................7, 9

*In re Polaroid ERISA Litig.,*
  240 F.R.D. 65 (S.D.N.Y. 2006) ........................................................18

*Pub. Emps.'Ret. Sys. of Miss. v. Merrill Lynch,*
  277 F.R.D. 97 (S.D.N.Y. 2011) ........................................................15, 17

*Robidoux v. Celani,*
  987 F.2d 931 (2d Cir. 1993) ........................................................17

*In re Sadia, S.A. Sec. Litig.,*
  269 F.R.D. 298 (S.D.N.Y. 2010) ........................................................17

*In re Scotts EZ Seed Litig.,*
  304 F.R.D. 397 (S.D.N.Y. 2015) ........................................................19

*Shapiro v. JPMorgan Chase & Co.,*
  2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ........................................................10, 17

*In re Telik, Inc. Sec. Litig.,*
  576 F. Supp. 2d 570 (S.D.N.Y. 2008) ........................................................11

*In re U.S. Foodservice, Inc.,*
  729 F.3d 108 (2d Cir. 2013) ........................................................16

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
  396 F.3d 96 (2d Cir. 2005) ........................................................6, 8, 21

*Wal-Mart Stores v. Dukes,*
  564 U.S. 338 (2011) ........................................................15, 16

*In re Warner Chilcott Ltd. Sec. Litig.,*
  2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) ........................................................9, 23

*Weinberger v. Kendrick,*
  698 F.2d 61 (2d Cir. 1982) ........................................................14

*Yuzary v. HSBC Bank USA, N.A,*
  2013 WL 1832181 (S.D.N.Y. Apr. 30, 2013) ........................................................6-7

## Other Authorities

Fed. R. Civ. P. 23 ........................................................ *passim*

Plaintiffs Benjamin Michael Merryman, Amy Whitaker Merryman Trust, B Merryman and A Merryman 4th Generation Remainder Trust and Chester County Employees Retirement Fund (collectively, "Plaintiffs") respectfully submit this memorandum of law in support of their motion for (i) preliminary approval of the proposed settlement of the above-captioned action ("Settlement") on the terms and conditions set forth in the Stipulation and Agreement of Settlement dated June 12, 2018 ("Stipulation"); (ii) certification of the Settlement Class for purposes of effectuating the Settlement; (iii) approval of the form, content and manner of providing notice of the Settlement to the Settlement Class; and (iv) a hearing to consider final approval of the Settlement and other related matters ("Final Approval Hearing").[1]

## I.      PRELIMINARY STATEMENT

Plaintiffs and JPMorgan Chase Bank, N.A. ("Defendant" or "JPM") have reached an agreement to settle this Litigation in exchange for $9.5 million in cash. If approved by the Court, the Settlement will result in a substantial payment to the Settlement Class and will resolve this Litigation in its entirety. Pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), Plaintiffs seek the Court's preliminary approval of the Settlement so that notice of the Settlement can be disseminated to Settlement Class Members and the Final Approval Hearing scheduled.

The Settlement—reached following more than two years of hard-fought litigation— provides a significant recovery for the Settlement Class. The Settlement follows Lead Counsel's extensive factual investigation into the Settlement Class's claims, a change of jurisdictional venue, multiple motions to dismiss, substantial discovery and coordination with a damages

---

[1]  All capitalized terms used herein that are not otherwise defined herein shall have the same meanings ascribed to them in the Stipulation filed concurrently herewith. The proposed Preliminary Approval Order is attached as Exhibit A to the Stipulation and a copy is also attached to Plaintiffs' Notice of Motion.

expert in connection with Plaintiffs' anticipated motion for class certification, and is the product of good faith, arm's-length negotiations by the Settling Parties.

Plaintiffs and their counsel are fully aware of the strengths and weaknesses of this case, and have evaluated the risks of continued litigation and the fairness of its resolution at this time. Indeed, by this Settlement, Settlement Class Members stand to receive a recovery that is a substantial percentage of the maximum potential recovery at trial, as calculated by Plaintiffs' damages expert during the Litigation. This result appropriately balances Plaintiffs' objective of securing the highest possible recovery for the Settlement Class while accounting for the risk that they could receive a smaller recovery—*or no recovery*—if Plaintiffs were to fail at the class-certification or summary-judgment stages, or to lose at trial. Moreover, Plaintiffs and Lead Counsel believe that the Settlement is in the best interest of the Settlement Class.

At the Final Approval Hearing, the Court will have before it more extensive motion papers in support of the Settlement and will be asked to make a determination as to whether the Settlement is fair, reasonable, and adequate under all of the circumstances surrounding the Litigation. At this time, Plaintiffs request entry of the proposed Preliminary Approval Order which will begin the final approval process by, among other things:

- preliminarily approving the terms of the Settlement set forth in the Stipulation;

- certifying the Settlement Class and appointing Plaintiffs as class representatives and Lead Counsel as class counsel, for purposes of the Settlement only;

- approving the retention of Kurtzman Carson Consultants LLC ("KCC") as Claims Administrator;

- approving the form and content of the Notice, Validation Letter, Claim Form and Summary Notice attached as Exhibits 1, 2, 3 and 4 to the Preliminary Approval Order;

- finding the method for disseminating the Notice, Claim Form and Validation Letter (in the case of Registered Holder Settlement Class Members) and publication of the Summary Notice to constitute the best notice practicable under the circumstances and

to satisfy the requirements of Rule 23, due process and all other applicable law and rules; and

- setting a schedule for (i) disseminating notice to the Settlement Class; (ii) requesting exclusion from the Settlement Class; (iii) objecting to the Settlement, or any part thereof; (iii) submitting Claim Forms; (iv) submitting papers in support of final approval of the Settlement and related matters; and (v) the Final Approval Hearing.

For the reasons set forth herein, the Settlement warrants the Court's preliminary approval and the Preliminary Approval Order should be entered.

## II.    NATURE AND PROCEDURAL BACKGROUND OF THE LITIGATION

Plaintiffs Benjamin Michael Merryman, Amy Whitaker Merryman Trust, B Merryman and A Merryman 4th Generation Remainder Trust (the "Merryman Plaintiffs") commenced this case on May 1, 2015 with the filing of a complaint asserting claims for breach of contract, breach of implied covenant of good faith and fair dealing and conversion against JPM in the Western District of Arkansas ("Arkansas Complaint").[2] On July 10, 2015, JPM moved to dismiss, or, in the alternative, to transfer the Arkansas Complaint to the Southern District of New York, which the Merryman Plaintiffs opposed. On November 19, 2015, the court granted JPM's motion to dismiss the Arkansas Complaint without prejudice on the grounds that the court lacked personal jurisdiction over JPM.

The Merryman Plaintiffs filed their initial complaint in this Court on November 21, 2015 (ECF No. 1) ("Class Action Complaint"). Like the Arkansas Complaint, the Class Action Complaint asserted claims for breach of contract, breach of implied covenant of good faith and fair dealing and conversion against JPM. Specifically, the Class Action Complaint alleged that during the relevant time period, JPM, serving as depositary bank for ADRs pursuant to Deposit Agreements entered into by JPM and foreign issuers, systematically deducted impermissible fees

---

[2] *See Merryman et al. v. JPMorgan Chase Bank, N.A.*, 15-cv-5100-TLB (W.D. Ark.).

from dividends and/or cash distributions issued by foreign companies, and owed to ADR holders. More specifically, it alleged that JPM assigned foreign exchange ("FX") rates to the conversion of non-U.S. dollar-based dividends and cash distributions by foreign companies, which reflected a spread that was added to the FX rate at which JPM actually converted the currency. As a result of JPM's practice of adding a spread to FX rates, the Class Action Complaint alleged that JPM improperly retained millions of dollars from dividends and cash distributions owed and payable to the class.

On January 22, 2016, JPM moved to dismiss the Class Action Complaint and/or stay all claims relating to the Chungwha Deposit Agreement in favor of arbitration. ECF Nos. 19-21. The Merryman Plaintiffs opposed JPM's motion on February 22, 2016. ECF Nos. 24-25.

On August 30, 2016, the Court heard argument on JPM's motion to dismiss and, on September 29, 2016, entered its Memorandum Opinion & Order granting in part and denying in part the motion (ECF No. 35) ("September 29 Order"). Specifically, the Court: (i) denied JPM's motion to dismiss the breach of contract claim for failure to state a claim on which relief could be granted; and (ii) granted JPM's motion as to breach of contract claims that accrued more than five years before the commencement of the lawsuit. By the September 29 Order, the Court also granted JPM's motion to dismiss as to the Merryman Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing, conversion, and punitive damages; granted JPM's motion to compel arbitration of all claims relating to the Chungwha ADR; and granted JPM's motion to deny the Merryman Plaintiffs' standing to represent ADR holders who held ADRs in which the Merryman Plaintiffs did not invest. On October 13, 2016, the Merryman Plaintiffs moved for partial reconsideration of the September 29 Order, which JPM opposed. ECF Nos. 39-

40. The motion for partial reconsideration was denied by the Court's Memorandum Opinion & Order entered February 2, 2017. ECF No. 61.

In the meantime, the Court, on October 21, 2016, entered an order that, among other things, permitted the Merryman Plaintiffs to amend the Class Action Complaint. ECF No. 42. In accordance with that Order, Plaintiffs filed the Amended Class Action Complaint, which added Chester County Employees Retirement Fund as a plaintiff on November 21, 2016. ECF No. 50. Plaintiffs filed a corrected version of their complaint—the operative complaint in the Litigation—on November 28, 2016 ("Amended Class Action Complaint"). ECF No. 55.

On January 13, 2017, JPM moved to partially dismiss the Amended Class Action Complaint, related to statute of limitations issues. ECF Nos. 59-60. Plaintiffs filed their opposition to JPM's partial motion to dismiss the Amended Class Action Complaint on February 13, 2017. ECF No. 62. On May 5, 2017, the Court entered its Memorandum Opinion & Order granting JPM's motion. ECF No. 68.

JPM answered the Amended Class Action Complaint on May 19, 2017. ECF No. 72. Thereafter, Plaintiffs and Defendant embarked on discovery, which involved significant efforts by both sides. These efforts included Defendant's production of over 250,000 pages of documents, Plaintiffs' production of over 10,000 pages of documents, six depositions and the exchange of Plaintiffs' expert report in support of class certification.

While continuing to undertake discovery, Lead Counsel and Defendant's Counsel began exploring the possibility of resolving the Litigation. Over the course of several months, counsel engaged in hard-fought, arm's-length negotiations. On April 12, 2018, the Settling Parties reached an agreement in principle to settle the Litigation and entered into a term sheet setting

forth the material terms of their agreement. On the same day, the Settling Parties notified the Court of their agreement. ECF No. 90.

Over the next two months, Plaintiffs and Defendant negotiated the Stipulation (and the exhibits thereto), setting forth the final and binding agreement to settle the Action. During this time, Plaintiffs also worked with JPM's transfer agent(s) to obtain the contact information and dividend/cash distribution amounts for Registered Holder Settlement Class Members, as well as their damages expert to develop the Plan of Allocation. The Settling Parties executed the Stipulation on June 12, 2018.

## III.   ARGUMENT

### A.   The Proposed Settlement Warrants Preliminary Approval

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented to the court for approval, and the settlement should be approved if the court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 154 (S.D.N.Y. 2013); *In re Am. Int'l Grp., Inc. Sec. Litig.*, 293 F.R.D. 459, 464 (S.D.N.Y. 2013).[3] Public policy favors settlement of class action litigation. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy."); *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 188 (S.D.N.Y. 2012) ("[W]e emphasize that [] there is a strong judicial policy in favor of settlements, particularly in the class action context[.]").

Judicial review of a proposed class action settlement consists of a two-step process: preliminary approval, followed by the distribution of notice to the class, and final approval. *See*

---

[3]   Unless otherwise noted, all emphasis in quotations is added, and internal quotation marks, citations and footnotes are omitted.

*Yuzary v. HSBC Bank USA, N.A*, 2013 WL 1832181, at *1 (S.D.N.Y. Apr. 30, 2013) ("Preliminary approval, which is what Plaintiffs seek here, is the first step in the settlement process. It simply allows notice to issue to the class and for class members to object to or opt-out of the settlement. After the notice period, the Court will be able to evaluate the settlement with the benefit of the Class Members' input."). "Preliminary approval of a settlement agreement requires only an 'initial evaluation' of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties." *Clark v. Ecolab, Inc.*, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009). The primary question raised by a request for preliminary approval is whether there is "probable cause to submit the settlement to class members and hold a full-scale hearing as to its fairness." *Id.* (alterations omitted); *see also Clem v. Keybank, N.A.*, 2014 WL 1265909, at *1 (S.D.N.Y. Mar. 27, 2014) (same).

Moreover, courts grant preliminary approval "[w]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval[.]" *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007); *accord In re Platinum & Palladium Commod. Litig.*, 2014 WL 3500655 (S.D.N.Y. Jul. 15, 2014), at *11; *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157 (E.D.N.Y. 2009). In conducting its preliminary approval inquiry, a court considers both the "negotiating process leading up to the settlement, i.e., procedural fairness, as well as the settlement's substantive terms, i.e., substantive fairness." *Platinum & Palladium*, 2014 WL 3500655, at *11. As shown below, the proposed Settlement is both procedurally and substantively fair.

7

### B.     The Settlement Occurred After Good Faith, Arm's-Length Negotiations Conducted By Well-Informed And Experienced Counsel

Here, the Settlement was achieved after several months of arm's-length negotiations between counsel for the Settling Parties. These negotiations followed more than two years of litigation, including the resolution of multiple motions to dismiss and substantial fact discovery. The fact that the Settlement was reached through arm's-length negotiations between experienced and well-informed counsel strongly supports the conclusion that the Settlement is fair. Indeed, a settlement may be presumed to be fair, where it is "reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *See Wal-Mart*, 396 F.3d at 116; *see also Dial Corp. v. News Corp.*, 317 F.R.D. 426, 430 (S.D.N.Y. 2016).

As noted above, the Settling Parties and their counsel were knowledgeable about the strengths and weaknesses of their respective cases prior to reaching their agreement to settle. The Merryman Plaintiffs conducted an extensive investigation prior to filing their initial complaints, prepared three detailed complaints, briefed multiple motions to dismiss, moved for reconsideration of the Court's September 29 Order, consulted with a damages expert, reviewed over 250,000 pages of documents produced by JPM, and took six merits depositions. As a result, Plaintiffs and Lead Counsel had an adequate basis for assessing the strength of the Settlement Class's claims and JPM's defenses when they entered into the Settlement. Moreover, Lead Counsel, a firm with extensive experience in prosecuting complex class actions in this District and around the country, believes that the Settlement is in the best interests of the Settlement Class. *See In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (Courts have consistently given "'great weight' . . . to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.").

Thus, the fact that the Settlement is the product of arm's-length settlement negotiations and was entered into by experienced and well-informed counsel, demonstrates that the process by which the Settlement was reached is procedurally fair. It is, therefore, presumptively fair, reasonable and adequate. *See City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *4 (S.D.N.Y. May 9, 2014) ("This initial presumption of fairness and adequacy applies here because the Settlement was reached by experienced, fully-informed counsel after arm's length negotiations"), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).

### C. The Substantial Benefits For The Settlement Class, Weighed Against Litigation Risks, Support Preliminary Approval

In addition to being procedurally fair—resulting from months of good faith negotiations between the Settling Parties—the Settlement is also substantively fair. At final approval, Plaintiffs will provide the Court with a full analysis of the factors set forth in *Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ("*Grinnell*").[4] A preliminary analysis of these factors supports preliminary approval.[5]

---

[4]  The *Grinnell* factors are: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Id.* at 463.

[5]  *See In re Warner Chilcott Ltd. Sec. Litig.*, 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20, 2008) ("Although a complete analysis of [the *Grinnell*] factors is required for final approval, at the preliminary approval stage, the Court need only find that the proposed settlement fits within the range of possible approval to proceed."); *Platinum & Palladium*, 2014 WL 3500655, at *12 ("At preliminary approval, it is not necessary to exhaustively consider the factors applicable to final approval.").

### 1.      The Complexity, Expense and Likely Duration of the Litigation

As this Court is aware, this Litigation involved numerous disputed questions of law. Further, given the complex nature of JPM's alleged misconduct of systematically deducting impermissible fees for conducting FX from dividends and/or cash distributions issued by foreign companies, and owed to ADR holders, expert analysis would be critical to establishing JPM's liability.

When the Settlement was reached, the Settling Parties were in the midst of discovery. Achieving a litigated verdict for Plaintiffs and the Settlement Class would have required additional years of litigation including completing: fact discovery; complex and expensive expert discovery; briefing on class certification and a potential Rule 23(f) appeal; an expected motion for summary judgment; and trial. Even then, it is virtually certain that appeals would be taken from any verdict. In addition, the foregoing would pose substantial expense for the Settlement Class. *See Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *8 (S.D.N.Y. Mar. 24, 2014) (further litigation "would involve extensive and contested motion practice, and, assuming the success of the Class Plaintiffs at each of these stages, a complex and costly trial, followed by likely appeals," all the while presenting "numerous hurdles to establishing [JPM]'s liability"). Any potential recovery, moreover, "would occur years from now, substantially delaying payment . . . to the Settlement Class." *Id.* In contrast, the Settlement provides the Settlement Class with an immediate and significant recovery.

### 2.      The Litigation Risks, Including the Risks of Establishing Liability and Damages

While Plaintiffs believe that their claims would be borne out by the evidence, they also recognized that they faced significant risks to establishing JPM's liability had the Litigation continued. For example, JPM vigorously contested and would have continued to argue that its

practice of adding a spread to FX rates did not constitute a breach of its contractual obligations, asserting that the controlling Deposit Agreements on which Plaintiffs rely contain no requirements concerning the FX rates to be applied and actually recognize that deductions will be made, vesting the currency conversion to JPM's discretion. In addition, in its motion to dismiss Plaintiffs' Class Action Complaint, JPM challenged whether Plaintiffs had standing to assert their claims at all, as many of the controlling Deposit Agreements and the ADRs themselves expressly precluded claims by anyone other than registered holders (which the Plaintiffs were not). In its September 29 Order, the Court acknowledged the ambiguity of these agreements, and Plaintiffs would surely face this obstacle again at summary judgment. ECF No. 35, p 15 ("Given that the contract is ambiguous as to whether Plaintiffs have contractual standing to assert claims pursuant to the ten ADRs identified by JPM, at this juncture the Court denies JPM's motion to dismiss those breach of contract claims on the ground of lack of contractual standing, without prejudice to renewing the argument at summary judgment.").[6]

As with contested liability issues, issues relating to damages also would have likely come down to an inherently unpredictable and hotly disputed "battle of the experts." *See, e.g.*, *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 579-80 (S.D.N.Y. 2008) ("[I]n this battle of experts, it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found"). Plaintiffs thus faced significant risk that the damages that now form the basis for Settlement Class Members' recoveries through this Settlement could never be proven at trial or would be greatly offset. In light of those risks, the

---

[6]  *See, e.g., Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 53 (2d Cir. 2012) (explaining that contract language must unambiguously exclude third party beneficiary on its face in order for exclusion to be enforced); *Eternity Global Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 178 (2d Cir. 2004) ("Unless for some reason an ambiguity must be construed against the plaintiff, a claim predicated on a materially ambiguous contract term is not dismissible on the pleadings.").

Settlement provides $9.5 million in cash—representing nearly thirty percent of the damages that Plaintiffs' damages expert calculated from the alleged ADR FX practices for the relevant securities (i.e., approximately $34 million).

### 3. The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation

In assessing a proposed settlement, courts also consider the range of reasonableness in light of both the best possible recovery and litigation risks, assessing "not whether the settlement represents the best possible recovery, but how the settlement relates to the strengths and weaknesses of the case." *City of Providence*, 2014 WL 1883494, at *9; *see also Bellifemine v. Sanofi-Aventis U.S. LLC*, 2010 WL 3119374, at *4 (S.D.N.Y. Aug. 6, 2010) (consideration whether "it provides a 'substantial recovery' in light of the relevant circumstances and does not 'compare the terms of the [s]ettlement with a hypothetical . . . measure of a recovery that might be achieved' through trial.") (alterations in original). To do so, courts "consider and weigh the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *Grinnell*, 495 F.2d at 462. A "reasonable" settlement "is not susceptible of a mathematical equation yielding a particularized sum," *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 130 (S.D.N.Y. 1997), *aff'd* 117 F.3d 721 (2d Cir. 1997); instead, "in any case there is a range of reasonableness with respect to a settlement," *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). Even "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Grinnell*, 495 F.2d at 455; *see also Sanofi-Aventis*, 2010 WL 3119374, at *4.

This Settlement falls well above that threshold. As set forth above, the Settlement provides *nearly thirty percent* of the damages that Plaintiffs' damages expert calculated from the

alleged ADR FX practices for the relevant securities. This substantial benefit must be viewed in light of the risk that a smaller recovery—or no recovery at all—might be achieved after continued litigation. Indeed, Plaintiffs believe this discount from their expert's "best case" damages calculation is warranted.

In sum, Plaintiffs still faced the substantial burdens of obtaining class certification, summary judgment motions, trial and likely appeals—a process which could possibly extend for years. In light of these litigation risks, Plaintiffs and Lead Counsel believe—based on their thorough understanding of the strengths and weaknesses of their claims against JPM after more than two years of litigation—that the proposed $9.5 million Settlement provides a solid recovery for the Settlement Class. Accordingly, the Settlement warrants preliminary approval.

## IV.   CERTIFICATION OF THE SETTLEMENT CLASS FOR SETTLEMENT PURPOSES IS APPROPRIATE

In granting preliminary approval, the Court should also certify the Settlement Class for purposes of the Settlement pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. The proposed Settlement Class, which has been stipulated to by the Settling Parties solely for purposes of effectuating the Settlement, consists of:

> [A]ll Persons or entities who are or were holders (directly or indirectly, registered or beneficially) of or otherwise claim any entitlement to any payment (whether a dividend, rights offering, interest on capital, sale of shares or other distribution) in connection with, (1) the securities listed in Appendix 1 to the Stipulation (including any predecessor or successor securities) from November 21, 2010 to the date of the Preliminary Approval Order, inclusive; or (2) the securities listed in Appendix 2 to the Stipulation (including any predecessor or successor securities) from November 21, 2012 to the date of the Preliminary Approval Order, inclusive.
>
> JPM and its officers, directors, legal representatives, heirs, successors, corporate parents, subsidiaries, and/or assigns, other than Investment Vehicles (which are not excluded), are excluded from the Settlement Class only to the extent that such Persons or entities had a proprietary (i.e., for their own account) interest in the securities listed in Appendix 1 or 2 hereto and not to the extent that they have held the securities in a fiduciary capacity or otherwise on behalf of any third-party client, account, fund, trust or employee benefit plan that otherwise falls within the definition of the Settlement Class. Also excluded from

the Settlement Class are any Persons and entities who or which excluded themselves from the Settlement Class by submitting a request for exclusion that is accepted by the Court.

Stipulation, ¶ 1(mm), ¶¶ 3-4.

The Second Circuit has long acknowledged the propriety of certifying a class solely for purposes of a class action settlement. *See*, *e.g.*, *Weinberger v. Kendrick*, 698 F.2d 61, 72 (2d Cir. 1982) ("The hallmark of Rule 23 is the flexibility it affords to the courts to utilize the class device in a particular case to best serve the ends of justice for the affected parties and to promote judicial efficiencies."). Certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *IMAX*, 283 F.R.D. at 186.

Nonetheless, a settlement class, like other certified classes, must satisfy all the requirements of Rules 23(a) and (b), though the manageability concerns of Rule 23(b)(3) are not at issue for a settlement class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997) ("Whether trial would present intractable management problems is not a consideration when settlement-only certification is requested."); *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006). As demonstrated below, the proposed Settlement Class satisfies these requirements.

### A.     The Settlement Class Satisfies The Requirements Of Rule 23(a)

Rule 23(a) permits class certification if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). The Settlement Class meets each of the foregoing requirements.

### 1.     The Proposed Settlement Class is Sufficiently Numerous

The Second Circuit presumes numerosity when a class consists of 40 or more members. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *see also Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch*, 277 F.R.D. 97, 105 (S.D.N.Y. 2011) (joinder of 100 investors' claims would be impractical). Further, "[w]hile a party seeking class certification must prove there are in fact sufficiently numerous parties, [c]ourts have not required evidence of exact class size or identity of class members to satisfy the numerosity requirement." *Glatt v. Fox Searchlight Pictures Inc.*, 293 F.R.D. 516, 535 (S.D.N.Y. 2013) (emphasis omitted; second alteration in original).

Here, JPM-sponsored ADRs were actively traded on public exchanges such as the New York Stock Exchange. Indeed, the weekly trading volume for a large majority of the ADRs at issue here exceeded 100,000. Moreover, this case involves nearly $16 billion in FX conversions for the 54 unique securities with damages during the relevant time period. All of these facts suggest that the Settlement Class consists of hundreds, if not thousands, of individuals who received cash distributions from JPM-sponsored ADRs, making joinder "impractical." *In re IndyMac Mortg.-Backed Sec. Litig.*, 286 F.R.D. 226, 233 (S.D.N.Y. 2012). Accordingly, the Settlement Class is sufficiently numerous that Rule 23(a)(1) is satisfied.

### 2.     Common Questions of Law and Fact Bind the Settlement Class

Rule 23(a)(2) requires that there be one issue of law or fact common to the class. To satisfy this provision, a common question "must be of such a nature that it is capable of class-wide resolution – which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 350 (2011). This commonality requirement poses a "low hurdle," *In re Nat. Gas Commod. Litig.*, 231 F.R.D. 171, 180 (S.D.N.Y. 2005), such that "[e]ven a single [common]

question will do," *Dukes*, 564 U.S. 359 (alterations in original). Courts routinely hold that commonality is satisfied in cases where a defendant has, through a common course of conduct, allegedly breached a duty that appears in its contracts with the different class members. *See, e.g., In re U.S. Foodservice, Inc.*, 729 F.3d 108, 124-25 (2d Cir. 2013).

Here, all Settlement Class Members share the following legal and/or factual questions:

- Whether JPM imposed FX rates for ADR cash distributions that reflected a spread over and above the FX rates JPM received and/or the interbank trading rate at the time of execution;

- Whether JPM deducted impermissible and/or unreasonable charges from cash distributions paid to ADR holders;

- Whether JPM is in breach of its contractual obligations owed to ADR holders by charging FX fees that are not permitted under the Deposit Agreements; and

- Whether Plaintiffs and Settlement Class Members suffered monetary damages as a result of JPM's conduct and the appropriate measure of damages.

A finding that JPM deducted a spread from each cash distribution at issue would establish that JPM breached its contracts with ADR holders and would establish liability as to all Settlement Class Members, thus resolving "an issue that is central to the validity of each one of the claim in one stroke," *Dukes*, 564 U.S. at 351. Commonality is thus satisfied.

### 3. Plaintiffs' Claims are Typical of Those of the Settlement Class

The requirement of Rule 23(a)(3) that the claims of the class representatives be "typical" of the claims of the class is established where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007). For this requirement, the critical question is whether the proposed class representatives and the class can point to a common "course of conduct" by defendants to support a claim for relief. *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009

WL 5178546, at *10 (S.D.N.Y. Dec. 23, 2009); *see also Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993) ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.").[7]

Here, Plaintiffs' claims arise from the same course of conduct on behalf of JPM as other Settlement Class Members' claims—the extraction of a sum (in the form of a spread over and above the FX rate actually received) from cash distributions. Further, Plaintiffs claim that because JPM had identical contractual duties across all relevant securities, Plaintiffs and the Settlement Class advance the same legal argument (i.e., breach of contract) to vindicate their claims. Courts have readily found that typicality exists under similar circumstances. *See, e.g.*, *Merrill Lynch*, 277 F.R.D at 106.

### 4.   Plaintiffs and Lead Counsel are Adequate Representatives of the Settlement Class

In determining whether "the representative parties will fairly and adequately protect the interests of the class," pursuant to Rule 23(a)(4), courts consider two factors: (i) whether the claims of the proposed class representatives conflict with those of the class; and (ii) whether their counsel are qualified, experienced, and generally able to conduct the litigation. *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); *Shapiro*, 2014 WL 1224666, at *15; *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 305 (S.D.N.Y. 2010). Both prongs are satisfied here.

First, no antagonism or conflict of interests exists between Plaintiffs and the proposed Settlement Class. JPM is alleged to have breached its contractual obligations to Settlement Class

---

[7]  *See In re Elec. Books Antitrust Litig.*, 2014 WL 1282293, at *12 (S.D.N.Y. Mar. 28, 2014) ("Commonality and typicality tend to merge into one another, so that similar considerations animate analysis of both.").

Members, including Plaintiffs, under materially similar contracts by retaining an amount from each cash distribution for itself by applying a spread to the actual FX rates it obtained. *See Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008) ("The fact that plaintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class; the same strategies that will vindicate plaintiffs' claims will vindicate those of the class."). Both Plaintiffs and the Settlement Class will rely on the same evidence and analysis to show that JPM breached its contracts with ADR holders.  Moreover, damages for all Settlement Class Members may be proved through a common methodology.  Thus, the claims of the Settlement Class would "prevail or fail in unison," and the common objective of maximizing their recovery from JPM aligns the interests of Plaintiffs and all members of the Settlement Class. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013). *See, e.g.*, *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.").

Second, Plaintiffs have retained experienced counsel to represent them in this Litigation. Kessler Topaz Meltzer & Check, LLP has extensive experience in complex class action litigation, and has acted to vigorously develop and prosecute the claims on behalf of the Settlement Class. *See* resume for Kessler Topaz Meltzer & Check, LLP attached hereto as Exhibit A. Accordingly, Rule 23(a)(4) is satisfied here.

### B.    The Settlement Class Satisfies The Requirements Of Rule 23(b)(3)

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently

adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The proposed Settlement Class meets this standard.

### 1.    Common Legal and Factual Questions Predominate over Any Individual Issues

Under Rule 23(b)(3), common questions of law or fact predominate "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *IndyMac*, 286 F.R.D. at 235-36. This requirement seeks, through the class action device, to "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about undesirable results." *See In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 240 (2d Cir. 2012) (alteration in original). Predominance entails a qualitative assessment that looks beyond the mere existence of individual issues or simply "determining whether there are more common issues or more individual issues, regardless of relative importance." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013). It thus assesses the cohesiveness of the class, under the principle that "[a]n issue 'central to the validity of each one of the claims' in a class action, if it can be resolved 'in one stroke,' can justify class treatment." *Id.* (*quoting Dukes*, 564 U.S. at 350). *See also, e.g., In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 410 (S.D.N.Y. 2015) (predominance established where defendants' breach of contract was subject to common proof).

As detailed above, numerous questions bear on JPM's liability and Settlement Class Members' damages and the significance of those questions is not outweighed by any issues particular to individual Settlement Class Members. Thus, predominance exists here.

## 2. A Class Action is Superior to Other Methods of Adjudication

In addition to predominance, Rule 23(b)(3) requires a showing that a class action is "superior to other available methods for fairly and efficiently adjudicating a controversy." *Id*. To this end, Rule 23(b)(3) sets forth the following non-exhaustive factors to be considered in making a determination of whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id*.

Since Plaintiffs request class certification only for the Settlement, the Court need not inquire as to the final factor. *See Amchem*, 521 U.S. at 620. Further, each of the remaining factors supports class certification. First, there is little incentive for individual Settlement Class Members to litigate these claims in separate actions given the relatively small amounts at issue for each Settlement Class Member relative to the individual costs of suit. Second, this case has been pending in this forum since November 2015, and the Court has already ruled on numerous motions, including motions to dismiss, thus making it familiar with the relevant facts, claims, and defenses. Moreover, given the likely large and geographically disperse Settlement Class, multiple lawsuits would risk disparate results, threaten to increase the cost of litigation for all parties, and pose an unnecessary burden on the court system. *IndyMac*, 286 F.R.D. at 243 (concentrating the litigation is desirable as it will "avoid the risk of inconsistent adjudication' and encourage the fair and efficient use of the judicial system"). In light of the foregoing, adjudicating this case as a class action "is clearly desirable" and superior to any other method. *See In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *14 (S.D.N.Y. July 27, 2007).

## V.     THE COURT SHOULD APPROVE THE FORM, CONTENT, AND METHOD FOR DISSEMINATING NOTICE TO THE SETTLEMENT CLASS

Plaintiffs request that the Court approve the form, and content of the proposed Notice and Summary Notice,[8] as well as the proposed manner for providing notice of the Settlement to Settlement Class Members as set forth in the Preliminary Approval Order. In connection with approval of notice of the Settlement, Plaintiffs also seek the Court's authorization to retain KCC as the Claims Administrator to supervise and administer the notice procedure in connection with the proposed Settlement as well as to process Claims. KCC was selected following a bidding process among KCC and two other well-respected administrators. As reflected in its resume attached hereto as Exhibit B, KCC is a nationally recognized notice and claims administration firm with extensive experience in settlement administration. KCC will adequately fulfill its duties in this case. *See also* http://www.kccllc.com.

In clear, concise, and plain language, the proposed Notice will "fairly apprise the prospective members of the class of the terms of the proposed settlement[s] and of the options that are open to them in connection with the proceedings," and provide all information required by Rule 23(c)(2)(B) and S.D.N.Y. Local Rule 23.1. *Wal-Mart*, 396 F.3d at 114. The Notice will advise recipients of, among other things, the nature of the Action, the definition of the Settlement Class, the essential terms of the Settlement (including the claims that will be released), the binding effect of the judgment, and information regarding Lead Counsel's motion for attorneys' fees and reimbursement expenses.

Specifically, as set forth in the Notice, Lead Counsel will apply for attorneys' fees not to exceed 33⅓% of the Settlement Fund plus reimbursement of Litigation Expenses not to exceed $400,000 incurred in connection with the prosecution and resolution of this Litigation, which

---

[8]  *See* Exs. A-1 and A-4 to the Stipulation.

amount may include a request for Service Awards to Plaintiffs up to an aggregate amount of $50,000. As also set forth in the Notice, Lead Counsel has fee-sharing agreements with additional counsel G. Chadd Mason, Esq. of Prevost, Shaff, Mason & Carns, PLLC (formerly of Mason Law Firm, PLC) and Amy C. Martin, Esq. of Amy C. Martin P.A. (formerly of Everett, Wales and Comstock), which provide that Lead Counsel will compensate these firms from the attorneys' fees that Lead Counsel receives in this Litigation in amounts commensurate with those firms' efforts in the Litigation.[9]

The Notice also provides specifics on the date, time and place of the Final Approval Hearing and set forth the procedures, as well as deadlines, for: (i) requesting exclusion from the Settlement Class; (ii) entering an appearance; (iii) objecting to the Settlement, the Plan of Allocation and/or the motion for attorneys' fees and reimbursement of expenses; and (iv) submitting a Claim Form if you are a Non-Registered Holder Settlement Class Member. Likewise, the Summary Notice provides a summary of the foregoing information and advises potential Settlement Class Members on how to obtain the more-detailed Notice.

Likewise, Plaintiffs' proposed method of dissemination provides notice "in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Specifically, the Notice will be mailed by first-class mail to Settlement Class Members at the addresses set forth in the records of JPM's transfer agent(s) or who otherwise may be identified through further reasonable effort, including through a notice campaign to the banks, brokerage

---

[9] Lead Counsel estimates that it has devoted approximately 6,250 hours to the prosecution of this Litigation to date. Lead Counsel's current hourly rates for the attorneys and professional support staff that worked on this Litigation are as follows: (i) $700-$850 per hour for partners; (ii) $675 per hour for counsel; (iii) $400-$550 per hour for associates; (iv) $350 per hour for staff attorneys; (v) $325 per hour for contract attorneys; (vi) $250-$275 per hour for paralegals and professional staff; and (vii) $275-$450 for investigators.

firms, and nominees set forth in KCC's proprietary nominee database. Along with the Notice, Registered Holder Settlement Class Members will receive a Validation Letter[10] setting forth the dividends/cash distributions they received for each of the eligible securities they held during the relevant time period, as provided by JPM's transfer agent(s). Non-Registered Holder Settlement Class Members will be mailed a Claim Form[11] along with their copy of the Notice.[12] The proposed Preliminary Approval Order also requires the Summary Notice to be published once in the national edition of *The Wall Street Journal* and to be transmitted once over the *PR Newswire*. In addition, copies of the Notice and Claim Form, along with other documents and information relevant to the Settlement, will be posted on the website for the Settlement, www.JPMorganADRFXSettlement.com. This manner of providing notice, which includes notice by first-class mail to Settlement Class Members who can be reasonably identified, supplemented by publication and internet notice, represents "the best notice practicable under the circumstances" and satisfies the requirements of Rule 23, due process and all other applicable laws and rules. *See*, *e.g.*, *City of Providence*, 2014 WL 1883494, at *2; *Warner Chilcott*, 2008 WL 5110904, at *3.

---

[10]  *See* Ex. A-2 to the Stipulation.

[11]  *See* Ex. A-3 to the Stipulation.

[12]  Registered Holder Settlement Class Members (i.e., Settlement Class Members who held (or hold) their eligible ADRs directly and are listed on the records of JPM's transfer agent(s)) will not be required to do anything further in order to be eligible to receive a payment from the Net Settlement Fund. If the information contained in their Validation Letter is complete and correct, that information will be used to calculate the Registered Holder Settlement Class Member's Claim under the Plan of Allocation. Non-Registered Holder Settlement Class Members (i.e., Settlement Class Members that held (or hold) their eligible ADRs through a bank, broker or other nominee) will be required to complete and submit a Claim Form in order to be eligible to receive a payment from the Net Settlement Fund as their relevant ADR holdings and dividend/cash distributions are unknown to the Settling Parties.

Accordingly, Plaintiffs respectfully submit that the proposed notice program is adequate and should be approved by the Court.

## VI. THE COURT SHOULD ADOPT THE PROPOSED SCHEDULE

In connection with preliminary approval of the Settlement, Lead Counsel respectfully proposes the schedule set forth below for Settlement-related events. The proposed schedule revolves around the date the Court enters the Preliminary Approval Order and the date of the Final Approval Hearing—which Plaintiffs request be no earlier than 131 calendar days from the date of entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter.[13]

| EVENT | PROPOSED TIMING |
|---|---|
| Mailing of the Notice and Validation Letter to Registered Holder Settlement Class Members and the Notice and Claim Form to Non-Registered Settlement Class Members (Preliminary Approval Order, ¶8(a)) | Beginning no later than 20 business days after the date of entry of the Preliminary Approval Order (the "Notice Date") |
| Publishing the Settlement Notice (Preliminary Approval Order, ¶8(c)) | No later than 10 business days after the Notice Date |
| Filing of opening briefs in support of final approval of Settlement, Plan of Allocation and Lead Counsel's application for attorneys' fees and reimbursement of Litigation Expenses, including Service Awards to Plaintiffs (Preliminary Approval Order, ¶27) | No later than 49 calendar days prior to the Final Approval Hearing |
| Requesting Exclusion from the Settlement Class (Preliminary Approval Order, ¶14) | No later than 35 calendar days prior to the Final Approval Hearing |
| Objecting to the Settlement, Plan of Allocation and/or Lead Counsel's application for attorneys' fees and reimbursement of Litigation Expenses, including Service Awards to Plaintiffs (Preliminary Approval Order, ¶17) | No later than 35 calendar days prior to the Final Approval Hearing |

---

[13] The Settling Parties respectfully request that the Court schedule the Final Approval Hearing no earlier than 131 days after the date of entry of the Preliminary Approval Order, so that, among other things, they may comply with the provisions set forth in the Class Action Fairness Act, 28 U.S.C. § 1715(b), and to allow sufficient time for brokers and nominees to transmit information to the Claims Administrator and beneficial holders.

| EVENT | PROPOSED TIMING |
|---|---|
| Filing of reply briefs (Preliminary Approval Order, ¶27) | No later than 7 calendar days prior to the Final Approval Hearing |
| Final Approval Hearing (Preliminary Approval Order, ¶3) | No earlier than 131 calendar days from the date of entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter |
| Submitting Claim Forms (applicable to Non-Registered Holder Settlement Class Members only) (Preliminary Approval Order, ¶11) | 150 calendar days after the Notice Date |

## VII.    CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court enter the proposed Preliminary Approval Order attached to Plaintiffs' Notice of Motion.

Dated:  June 12, 2018                    Respectfully Submitted,

**KESSLER TOPAZ MELTZER
& CHECK, LLP**


 _s/Sharan Nirmul_
Joseph H. Meltzer
Sharan Nirmul
Ethan Barlieb
Jonathan Neumann
280 King of Prussia Road
Radnor, PA 19087
Telephone:  (610) 667-7706
Facsimile:  (610) 667-7056
jmeltzer@ktmc.com
snirmul@ktmc.com
ebarlieb@ktmc.com
jneumann@ktmc.com

*Counsel for Plaintiffs and the
Proposed Settlement Class*