# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BENJAMIN MICHAEL MERRYMAN, AMY WHITAKER MERRYMAN TRUST, B MERRYMAN AND A MERRYMAN 4TH GENERATION REMAINDER TRUST AND CHESTER COUNTY EMPLOYEES RETIREMENT FUND, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>     v.<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>     Defendant. | CIVIL ACTION NO. 1:15-cv-09188-VEC |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR APPROVAL OF MODIFICATIONS TO NOTICE PLAN
AND SCHEDULE FOR APPROVAL OF SETTLEMENT**

**TABLE OF CONTENTS**

**Page**

I. PRELIMINARY STATEMENT ..................................................................................1

II. FACTUAL AND PROCEDURAL BACKGROUND..........................................................3

III. ARGUMENT..................................................................................................................3

    A. The Standard for Class Notice ...............................................................................3

    B. Media and Internet-Based Notice for Non-Registered Holders..............................5

        1. The Claims Administrator Has Conducted an Extensive Outreach to Nominees ...................................................................................5

        2. Nominee Response to the Notice Has Been Low and the Information Provided By Nominees to Date Is Insufficient to Provide Adequate Notice to Non-Registered Holders .................................7

        3. Media and Internet-Based Notice Will Reach the Most Non-Registered Holders .....................................................................................8

    C. Plaintiffs' Proposed Modifications to the Notice Plan Would Result in Substantial Cost Savings for the Settlement Class .................................................10

        1. Postcard Notice to the Registered Holders is a More Efficient Means of Mailed Notice..............................................................................10

        2. Media and Internet-Based Notice for Non-Registered Holders also Results in Significant Cost Savings ............................................................12

    D. The Court Should Modify the Schedule for Final Approval of the Settlement .............................................................................................................13

VI. CONCLUSION...............................................................................................................14

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*In re Advanced Battery Tech., Inc. Sec. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014) ............................................................................................12, 13

*Arbuthnot v. Pierson*,
   607 F. App'x 73 (2d Cir. 2015) ................................................................................................ 3-4

*Dornberger v. Metro. Life Ins. Co.*,
   203 F.R.D. 118 (S.D.N.Y. 2001) ...................................................................................................9

*Edwards v. N. Am. Power & Gas, LLC*,
   2018 WL 3715273 (D. Conn. Aug. 3, 2018) ................................................................................12

*Eisen v. Carlisle & Jaquelin*,
   417 U.S. 156 (1974) .......................................................................................................................9

*McLaughlin v. IDT Energy*,
   2018 WL 3642627 (E.D.N.Y. July 30, 2018) ..............................................................................12

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
   246 F.R.D. 156 (S.D.N.Y. 2007) ...................................................................................................4

*In re MetLife Demutualization Litig.*,
   689 F. Supp. 2d 297 (E.D.N.Y. 2010) ....................................................................................4, 13

*Mullane v. Cent. Hanovor Bank & Tr. Co.*,
   339 U.S. 306 (1950) .......................................................................................................................9

*In re Platinum & Palladium Commodities Litig.*,
   2014 WL 3500655 (S.D.N.Y. July 15, 2014) ..............................................................................10

*Spann v. J.C. Penney Corp.*,
   314 F.R.D. 312 (C.D. Cal. 2016) ............................................................................................ 9-10

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) .......................................................................................10

*In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act Litig.*,
   295 F.R.D. 438 (C.D. Cal. 2014) .................................................................................................10

**Other Authorities**

Fed. R. Civ. P. 23 ................................................................................................................8

Robert H. Klonoff, *Class Actions in the Year 2026: A Prognosis*,
    65 EMORY L.J. 1569 (2016) ........................................................................................9

Todd B. Hilsee et. al., *Hurricanes, Mobility, and Due Process: The "Desire-to-
    Inform" Requirement for Effective Class Action Notice Is Highlighted by
    Katrina*, 80 Tul. L. Rev. 1771 (2006) ..........................................................................9

William B. Rubenstein, *Newberg on Class Actions* § 8:28 (5th ed. 2015) ......................12

Plaintiffs Benjamin Michael Merryman, Amy Whitaker Merryman Trust, B Merryman and A Merryman 4th Generation Remainder Trust and Chester County Employees Retirement Fund (collectively, "Plaintiffs") respectfully submit this memorandum of law in support of their unopposed motion to approve modifications to: (i) the form and manner of providing notice of the settlement of the above-captioned action ("Settlement") to the Settlement Class, approved in this Court's Order of July 18, 2018; and (ii) the schedule for final approval of the Settlement, including the date of the Final Approval Hearing.[1]  This Motion does not seek to disturb any other aspects of the Court's July 18, 2018 Order.

## I.  PRELIMINARY STATEMENT

Having now spent approximately three months collecting and processing data related to Settlement Class Members, Plaintiffs have determined that notice of the Settlement can be most efficiently and effectively provided via a multifaceted notice campaign rather than the contemplated U.S. mail notice process originally proposed.  The revised proposal combines a postcard notice to registered holders of JPM-sponsored ADRs, for whom complete contact and holdings information has been provided by JPM's transfer agent, with an extensive media and Internet-based notice campaign to non-registered holders, for whom contact information is incomplete and, for the data obtained, unreliable and largely insufficient. As compared to the original notice plan which contemplated a full mailed notice to all potential Settlement Class Members, the proposed modified notice plan has two clear advantages. First, the modified notice plan will notify more Settlement Class Members of the Settlement than could be notified though a traditional notice program. And second, the modified notice plan is substantially more cost-

---

[1] All terms with initial capitalization not otherwise defined herein shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated June 12, 2018 (ECF No. 99) (the "Stipulation"), and in the Court's July 18, 2018 Order (ECF No. 104) (the "Preliminary Approval Order").

effective than a traditional notice program and will result in a larger portion of the settlement proceeds ultimately going to the Settlement Class.

The proposed media and Internet-based notice program for non-registered holders has been carefully designed by notice expert Jeanne C. Finegan and utilizes targeted sources, such as specialty investment publications, nationally circulated newspapers, advertisements in investment related e-newsletters, Internet advertising, and social media, to maximize reach to potential Settlement Class Members. In particular, Ms. Finegan estimates that this effort will reach an estimated 90% of Settlement Class Members, who will receive notice more than four times each on average. This far exceeds the anticipated reach of traditional mailed notice, especially where the claims administrator has received largely incomplete data regarding non-registered holders and where the accuracy of that data is in question. The proposed multimedia campaign also follows the changing trends in notice under Rule 23, as courts are increasingly more supportive of alternative means of notice and, notably, the forthcoming amendments to the Rule specifically recognize the utility of electronic notice. The proposed modified notice campaign also will preserve substantial money for the Settlement Class.  Substituting postcard notice (a widely accepted practice) to registered holders in place of full mailed notice saves approximately $500,000 in notice costs alone, and utilizing the multimedia campaign to notify non-registered holders of the Settlement will save up to several million dollars.

Given the improved reach with respect to non-registered holders and the cost savings to the Settlement Class as a whole, Plaintiffs submit that the proposed modifications to the notice campaign are in the best interests of the Settlement Class and the most reasonably practicable under the circumstances.  Accordingly, Plaintiffs respectfully request the Court to enter an Order

approving the proposed modifications to the notice plan and schedule for final approval of the Settlement, set forth herein (the "Modified Notice Order").

## II.   FACTUAL AND PROCEDURAL BACKGROUND

This action concerns, Defendant JPMorgan Chase Bank, N.A.'s ("JPM" or "Defendant") alleged practice of deducting impermissible fees from dividends and/or cash distributions when it conducted foreign exchange ("FX") transactions in its role as depositary bank for certain American Depositary Receipts or securities ("ADRs"). In particular, Plaintiffs alleged that JPM assigned FX rates to the conversion of non-U.S. dollar-based dividends and cash distributions that were issued by foreign companies and owed to the holders of ADRs, which reflected a spread that was added to the FX rate at which JPM actually converted the currency. As a result of JPM's alleged practice, Plaintiffs alleged that JPM improperly retained millions of dollars from dividends and cash distributions owed and payable to the class.

On April 12, 2018, after litigating two motions to dismiss and a motion for reconsideration and after conducting substantial document and deposition discovery, the parties reached an agreement in principle to settle the matter. On June 12, 2018, Plaintiffs filed their Unopposed Motion for Preliminary Approval of Proposed Class Action Settlement (ECF Nos. 97-99), which contemplated mailing a full notice to all holders of 54 JPM-sponsored ADRs who received cash payments in connection with their holdings during the relevant time period (*i.e.*, the Settlement Class Members). On July 18, 2018, the Court entered an Order approving Plaintiffs' Motion, including the notice plan articulated therein.  ECF No. 104.

## III.   ARGUMENT

### A.   The Standard for Class Notice

"The adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Arbuthnot v. Pierson*, 607 F. App'x

3

73, 73 (2d Cir. 2015) (citing *Wal–Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 113–14 (2d Cir. 2005)). "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Id.* At 73-4.

"Notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members." *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 246 F.R.D. 156, 166 (S.D.N.Y. 2007) (citing *Weigner v. City of New York,* 852 F.2d 646, 649 (2d Cir. 1988)). "[T]he district court has virtually complete discretion as to the manner of giving notice to class members." *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 345 (E.D.N.Y. 2010) (quoting *Handschu v. Special Servs. Div.*, 787 F.2d 828, 833 (2d Cir. 1986)).

Here, there are two categories of Settlement Class Members: (1) Settlement Class Members who held (or hold) their eligible ADRs through a bank, broker or other nominee ("Non-Registered Holders" or "Non-Registered Holder Settlement Class Members"); and (2) Settlement Class Members who held (or hold) their eligible ADRs directly and are listed on the records of Defendant's transfer agent ("Registered Holders" or "Registered Holder Settlement Class Members"). As described below, the information reasonably available to Plaintiffs concerning the Non-Registered Holders differs substantially (in terms of accuracy and completeness) from the information reasonably available to Plaintiffs concerning the Registered Holders. In light of this difference, Plaintiffs are proposing a modified notice campaign tailored to reach as many Settlement Class Members as possible and avoid unnecessary costs. The

modified notice campaign thus contemplates media and Internet-based notice to Non-Registered Holders and a mailed postcard notice to Registered Holders.

  **B.**  **Media and Internet-Based Notice for Non-Registered Holders**

    **1.**  *The Claims Administrator Has Conducted an Extensive Outreach to Nominees*

Under the notice program set forth in the Preliminary Approval Order, Lead Counsel and the claims administrator, Kurtzman Carson Consultants, LLC ("KCC") rely almost entirely on the cooperation and assistance of banks, brokers and other nominees ("Nominees") to provide notice to Non-Registered Holders. In accordance with the Preliminary Approval Order, KCC began its outreach to Nominees on August 15, 2018 by mailing copies of the full Notice and Claim Form ("Notice Packet") to the Nominees contained in its proprietary database. *See* Declaration of Justin R. Hughes attached hereto as Exhibit 4, at ¶7.[2] As instructed in the Notice (and also highlighted in a cover letter accompanying the Notice Packet), Nominees were to either provide the names and addresses of Non-Registered Holders to KCC or request sufficient copies of the Notice Packet to send directly to Non-Registered Holders *within 30 days* of receiving the Notice. *Id*. at ¶7.[3] KCC also sent follow-up emails to Nominees on August 21, 2018 and September 17, 2018. *Id*. at ¶8. Building in a few days for Nominees to actually receive the Notice Packet in the mail, the deadline for Nominee responses was the week of September 17, 2018. *Id*. at ¶11.

---

[2] ECF No. 104 at ¶8(a).
[3] *See also* ECF No. 104 at ¶10.

### 2. *Nominee Response to the Notice Has Been Low and the Information Provided By Nominees to Date Is Insufficient to Provide Adequate Notice to Non-Registered Holders*

For a class action settlement of this nature, KCC typically receives information from 40-60 Nominees. *Id.* at ¶10. However, as of October 30, 2018 (over a month past the deadline for Nominees to respond), KCC has only received responses from 28 Nominees, with only 11 of those Nominees providing "final and complete" data. *See* Ex. 4 at ¶11.[4] In addition, one Nominee has provided incomplete data (*e.g.*, names and addresses for holders of only certain ADRs) and another Nominee has informed KCC that they would be producing names and addresses for the Settlement, but have not yet produced any data. *Id*. In sum, as of October 30, 2018, KCC has received an aggregate of approximately 4.4 million names and addresses of potential Settlement Class Members from the responding Nominees with only about 1 million of the 4.4 million falling into the "final and complete" data category. *Id*. at ¶11. Given that registered holders typically comprise between 5-10% of a class (*see* Ex. 4 at ¶12), it would be reasonable to expect that the number of Non-Registered Holders here could be as many as 7-14 million.

Additionally, Plaintiffs have concerns as to the accuracy of the names and addresses being provided. In a typical class action involving a single security, there is often substantial duplication in the data provided by Nominees and these productions can be over inclusive. *See* Declaration of Jeanne C. Finegan attached hereto as Exhibit 5 (the "Finegan Declaration"), at ¶13. Here, one could reasonably assume that these issues would be magnified given the two class periods, the more than 50 eligible ADRs, and the requirement of a cash payment in order to

---

[4] Given the numerous inquiries from Nominees regarding the Settlement Class definition and search perimeters, KCC has requested that Nominees confirm the parameters of their searches when providing names and addresses. Once a confirmation is provided by the Nominee, KCC considers the data "final and complete." *See Id*.

qualify as a Settlement Class Member. A further consideration is the age of the class. Since 2010, there have been numerous Nominee mergers, acquisitions and closings resulting in incomplete, outdated, archived and/or purged data being provided (or not provided) for mailings. *See* Ex. 5 at ¶13. In fact, at least one Nominee, which has supplied names and addresses for approximately 1.3 million purported Non-Registered Holders, has informed KCC that, due to internal system limitation, it has data only for the last 7 years (not the full class period) and that total accuracy of the data cannot be guaranteed. *See* Ex. 4 at n.5.

Relatedly, a large portion of the Non-Registered Holder data here is held by third parties who are not banks or brokers, but rather handle notice mailings on behalf of Nominees. Because this data is not being provided to KCC, Lead Counsel and KCC have no control over notice to these Non-Registered Holders – *e.g.*, no ability to, among other things: (i) de-duplicate records or apply other measures to reduce data counts and prevent duplicate mailings, (ii) confirm that notice is actually mailed to these individuals/entities, or (iii) receive and track undeliverable mailings and ensure that addresses are updated. These third parties also will seek compensation, which would, in some cases, nearly double the cost of providing notice to these Non-Registered Holders if handled by KCC. *See* Ex. 4 at ¶13, n.6.

Given the foregoing issues that have come to light during KCC's Nominee outreach, Plaintiffs believe that providing individual mailed notice to the Non-Registered Holders whose names and addresses KCC has received – just a portion of the total Non-Registered Holders – would not be practicable under the circumstances. Rather, Plaintiffs and their counsel believe that the media and Internet-based notice campaign detailed in the Finegan Declaration – which will reach at least 90 percent of targeted Settlement Class Members (*see* Ex. 5 at ¶18, ¶54) –

provides a more appropriate form of notice to Non-Registered Holders when considering the particular circumstances of this case.

### 3. *Media and Internet-Based Notice Will Reach the Most Non-Registered Holders*

The circumstances of this Action warrant a different approach to the conventional (and as suggested by Ms. Finegan, outdated) notice programs utilized in class actions involving investors in publicly traded securities. This approach conforms to approaches that are being increasingly utilized with great efficiency in consumer class actions, and which is endorsed by the forthcoming amendment to Rule 23 that specifically provides for electronic forms of notice. *See* Fed. R. Civ. P. 23(c)(2)(B), effective December 1, 2018, absent contrary Congressional action (allowing notice by "electronic means, or other appropriate means"). Offering further support for alternative forms of notice, the comments to the 2018 Amendments state:

> Instead of preferring any one means of notice, therefore, the amended rule relies on courts and counsel to ***focus on the means or combination of means most likely to be effective in the case before the court***. The court should exercise its discretion to select appropriate means of giving notice. … Means, format, and content that would be appropriate for class members likely to be sophisticated, for example in a securities fraud class action, might not be appropriate for a class having many members likely to be less sophisticated. The court and counsel may wish to consider the use of class notice experts or professional claims administrators.

Accordingly, Plaintiffs propose a multi-layered media and Internet-based campaign as the primary form of notice to Non-Registered Holders.

As detailed in the Finegan Declaration, *see* Ex. 5 at ¶¶24-50, this campaign will target Settlement Class Members through a combination of print media (*e.g.,* publications in consumer magazines, nationally circulated newspapers and investment newsletters) and online resources (*e.g.,* banner ads on a variety of business, news and investment websites; search words and terms on Google AdWords; social media outreach, on Facebook and LinkedIn, and press releases). *See*

8

proposed Banner and Search Ads, attached as Exhibit 2 and proposed Publication Notice, attached as Exhibit 3. As opposed to mailing individual notice to the Non-Registered Holders (whose names and address information is, as discussed above, largely incomplete and potentially inaccurate), with little certainty as to whether the notice is read, let alone received, the modern, media and Internet-based notice campaign proposed here will provide Lead Counsel and the Court with quantifiable results.[5] Notably, HF Media estimates that the media campaign will reach an estimated 90% of the Settlement Class Members, more than 4 times on average. And, as set forth below, this campaign would save millions of dollars, further maximizing the settlement proceeds available for the Settlement Class.

Notice campaigns such as the one proposed here are frequently endorsed by courts in circumstances where class member information is not readily available. *See, e.g., Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 123–24 (S.D.N.Y. 2001) (approving notice plan and concluding that "reasonable efforts were taken to notify all members of the class" where part of the class received direct mail notice and part of the class was covered by publication notice);

---

[5] *See* Robert H. Klonoff, *Class Actions in the Year 2026: A Prognosis*, 65 EMORY L.J. 1569, 1650-51 (2016) ("Courts have increasingly utilized social media, including Facebook, to notify class members of certification, settlement, or other developments. That development is very significant; class members who may not read a notice sent by mail or a notice reprinted in a newspaper might well study a notice on a social media site. Thus, use of social media helps to ensure that notice is more widely disseminated and absorbed, allowing more class members to actually participate in the fruits of any successful class action."); *see also* Todd B. Hilsee et. al., *Hurricanes, Mobility, and Due Process: The "Desire-to-Inform" Requirement for Effective Class Action Notice Is Highlighted by Katrina*, 80 Tul. L. Rev. 1771, 1794 (2006) (suggesting substantial shortcomings associated with mailed notice, including that "[s]tudies show that 75% of all direct mail ends up in the trash unopened"). Of further note, the Supreme Court in *Eisen* and *Mullane* specifically warned against notice procedures as "mere gesture[s]," instead directing that the means employed to provide notice should reflect a desire to "actually" inform absent class members. *Eisen v. Carlisle & Jaquelin*, 417 U.S. 156, 174 (1974) (quoting *Mullane v. Cent. Hanovor Bank & Tr. Co.*, 339 U.S. 306, 315 (1950) ("But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.")).

*Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 330 (C.D. Cal. 2016) (approving notice program that "utilizes a combination of individual notice to known class members in the form of Email Notices and Post–Card Notices and a schedule of publication notices in English and Spanish in magazines, on certain internet networks, on Facebook, and in a press release" and for which, according to notice expert, "the notices will reach 75% of targeted potential class members, on average, 2.3 times"); *In re Platinum & Palladium Commodities Litig.*, 2014 WL 3500655, at *14 (S.D.N.Y. July 15, 2014) (approving publication notice as "the best practicable notice plan under the circumstances" where a "direct notice program is not feasible" for part of the settlement class); *see also In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) ("Because defendants do not have a list of potential class members, [] the court agrees with plaintiffs that notice by publication is the only reasonable method of informing class members of the pending class action and the [] settlement.") (citing David F. Herr, *Manual for Complex Litigation* (4th ed. 2004) § 21.311 (4th ed. 2004) ("Publication in magazines, newspapers, or trade journals may be necessary if individual class members are not identifiable after reasonable effort")); *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 448–49 (C.D. Cal. 2014) (same and collecting cases). Given the circumstances here, Plaintiffs' proposed media and Internet-based campaign is the most practicable form of notice for the Non-Registered Holders.

    **C.**    **Plaintiffs' Proposed Modifications to the Notice Plan Would Result in Substantial Cost Savings for the Settlement Class**

        **1.**    *Postcard Notice to the Registered Holders is a More Efficient Means of Mailed Notice*

Upon entry of the Preliminary Approval Order, KCC began processing the voluminous amount of data for the Registered Holders that was received from Defendant's transfer agent. *See* Ex. 4 at ¶¶2-3. These efforts, which included synthesizing and scrubbing the data, updating

addresses through the National Change of Address Database, and de-duping names and addresses, resulted in identifying the names, addresses, and dividend and/or cash distribution information (*i.e.*, aggregate dividend and cash distribution amounts per ADR per year during the relevant time period) for approximately 700,000 potential Registered Holders. *See Id*. at ¶¶2-3. Under the Preliminary Approval Order, Plaintiffs must individually mail to Registered Holders the full Notice and a Validation Letter.[6] Under this scheme, KCC estimates that mailed notice to the Registered Holders would cost approximately $1 million. *See* Ex. 4 at ¶4. Such a cost, however, which *only* covers initial notice, is disproportionate to the number of Registered Holders. *See* Ex. 4 at ¶12 (noting that in KCC's experience, registered holders make up only 5-10% of an investor class). This cost would unfairly diminish the funds available to all Settlement Class Members, and Plaintiffs thus request permission to provide mailed notice to the Registered Holders via postcard, attached as Exhibit 1 (the "Postcard Notice"). Approving the Postcard Notice (in conjunction with a web portal where Registered Holders can access their holding and cash distribution information) would reduce notice costs by approximately $500,000. *See* Ex. 4 at ¶4.

The Postcard Notice would still provide individual, mailed notice to Registered Holders and would direct them to the website, www.JPMorganADRFXSettlement.com (the "Settlement Website"), for more information, including the full Notice. Moreover, the Postcard Notice would include a unique claim number and pin for each Registered Holder. Using their unique claim number and pin, each Registered Holder will be able to log-on to a portal available on the Settlement Website, in order to review their holding and cash distribution information provided by Defendant's transfer agent (the same information that was to be provided in the Validation

---

[6] ECF No. 104 at ¶8(a) & n.3.

Letter) and provide any necessary corrections to KCC. Unless a correction to the holding and/or cash distribution information is necessary, Registered Holders will not need to take any further action in order to be eligible to receive a payment from the settlement proceeds as was contemplated under the Preliminary Approval Order.

Courts routinely allow notice by postcard, such as Plaintiffs are requesting here. *See, e.g., In re Advanced Battery Tech., Inc. Sec. Litig.*, 298 F.R.D. 171, 182-183 (S.D.N.Y. 2014) (recognizing that "[g]iven the small size of the Settlement, Lead Counsel sought to minimize notice costs" and approving postcard notice, which directed class members to a website that contained the long notice); *Edwards v. N. Am. Power & Gas, LLC*, 2018 WL 3715273, at *5 (D. Conn. Aug. 3, 2018) (approving notice by postcard, which directed class members to settlement website); *McLaughlin v. IDT Energy*, 2018 WL 3642627, at *9 (E.D.N.Y. July 30, 2018) (approving "short-form notice to the proposed settlement class sent as a postcard and a long-form notice distributed via the Internet").[7] Thus, Plaintiffs respectfully request the Court enter the Modified Notice Order, which allows notice to Registered Holders via the Postcard Notice.

### 2. *Media and Internet-Based Notice for Non-Registered Holders also Results in Significant Cost Savings*

The proposed media and Internet-based notice campaign described above, aside from reaching far more Non-Registered Holder Settlement Class Members than a traditional mailed notice, is also far more cost-efficient for the Settlement Class. In particular, the printing and postage costs for providing Notice Packets to the over 4.4 million names provided to KCC by

---

[7] *See also* William B. Rubenstein, *Newberg on Class Actions* § 8:28 (5th ed. 2015) ("[N]umerous courts have held that postcard notice is 'more than sufficient.'") (collecting cases).

Nominees to date would cost in excess of $3.5 million.[8] Such a cost, ***for notice only***, counsels in favor of an alternative form of notice under the circumstances. *See In re Advanced Battery*, 298 F.R.D. at 182-183 (considering size of settlement and notice costs in approving notice plan); *see also In re MetLife Demutualization Litig.*, 689 F. Supp. 2d at 345 (citing *Handschu*, 787 F.2d at 832–33). The media and Internet-based notice campaign would thus save millions of dollars for the Settlement Class, further justifying the modification proposed herein.

        **D.**        **The Court Should Modify the Schedule for Final Approval of the Settlement**

In connection with the requested modifications to the notice plan, Plaintiffs respectfully request the Court modify the schedule, as set forth below:

| EVENT | PROPOSED TIMING |
|---|---|
| Mailing of the Postcard Notice to Registered Holder Settlement Class Members | Beginning no later than 20 business days after the date of entry of the Modified Notice Order ("Modified Notice Date") |
| Media Campaign | Beginning no later than 10 calendar days after the date of entry of the Modified Notice Order |
| Filing of opening briefs in support of final approval of Settlement, Plan of Allocation and Lead Counsel's application for attorneys' fees and reimbursement of Litigation Expenses, including Service Awards to Plaintiffs | No later than 49 calendar days prior to the Final Approval Hearing |
| Requesting Exclusion from the Settlement Class | No later than 35 calendar days prior to the Final Approval Hearing |
| Objecting to the Settlement, Plan of Allocation and/or Lead Counsel's application for attorneys' fees and reimbursement of Litigation Expenses, including Service Awards to Plaintiffs | No later than 35 calendar days prior to the Final Approval Hearing |
| Filing of reply briefs | No later than 7 calendar days prior to the Final Approval |

---

[8] This amount does not account for the increased mailed notice costs that may be charged by third parties (not banks or brokers) who hold Non-Registered Holder data that has not been provided to KCC. *See supra* at 7.

| | Hearing |
|---|---|
| Final Approval Hearing | No earlier than 135 calendar days from the date of entry of the Modified Notice Order, or at the Court's earliest convenience thereafter |
| Submitting Claim Forms (applicable to Non-Registered Holder Settlement Class Members only) | No later than 150 calendar days after the Modified Notice Date |

## VI.  CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court enter the Modified Notice Order.[9]

Dated:  November 1, 2018                    Respectfully Submitted,

**KESSLER TOPAZ MELTZER
& CHECK, LLP**


 _/s/ Sharan Nirmul_
Joseph H. Meltzer
Sharan Nirmul
Ethan Barlieb
Jonathan Neumann
280 King of Prussia Road
Radnor, PA 19087
Telephone:  (610) 667-7706
Facsimile:  (610) 667-7056
jmeltzer@ktmc.com
snirmul@ktmc.com
ebarlieb@ktmc.com
jneumann@ktmc.com

*Counsel for Plaintiffs and the
Settlement Class*

---

[9] The parties have agreed that the Settlement shall be amended upon the Court's entry of the Modified Notice Order.  *See* Ex. 6.