USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/22/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X
BENJAMIN MICHAEL MERRYMAN, AMY
WHITAKER MERRYMAN TRUST, B
MERRYMAN AND A MERRYMAN 4TH
GENERATION REMAINDER TRUST and
CHESTER COUNTY EMPLOYEES
RETIREMENT FUND, individually and on
behalf of all others similarly situated,

                          Plaintiffs,

                          -against-

JPMORGAN CHASE BANK, N.A.,

                          Defendant.
-------------------------------------------------------------- X

15-CV-9188 (VEC)

OPINION AND ORDER

VALERIE CAPRONI, United States District Judge:

On June 20, 2019, Plaintiffs moved for final approval of the Proposed Class Action Settlement and Plan of Allocation. Dkt 121. Plaintiffs separately moved for an award of attorneys' fees, reimbursement of litigation expenses, and service awards to the named Plaintiffs. Dkt. 123. Orders approving the Settlement Agreement and Plan of Allocation were entered separately. Dkts. 144, 145. This opinion concerns only the Motion for Attorneys' Fees and Reimbursement of Litigation Expenses. Because the requested fees and expenses are bloated and unreasonable, the motion is GRANTED in part and DENIED in part.

## I.     BACKGROUND

Plaintiffs are owners of American Depositary Receipts ("ADRs") held on deposit by J.P. Morgan Chase Bank, N.A. ("JPM"). Nirmul Decl., Dkt. 125 ¶ 12. ADRs are negotiable United States securities that enable holders to obtain ownership of publicly traded shares in foreign corporations. *Id.* Pursuant to Deposit Agreements between JPM, the foreign issuer, and the registered owners of the ADRs, JPM converted dividends or cash distributions received from the

1

foreign companies into U.S. dollars before distributing them to the owners of the ADRs. *Id.* ¶ 13. Plaintiffs claim that during the conversion into U.S. dollars, JPM added a spread over and above the foreign exchange ("FX") rates it obtained. *Id.* In adding this spread, Plaintiffs allege Defendant breached the Deposit Agreements. *Id.* ¶ 14.

On May 1, 2015, the Merryman Plaintiffs,[1] represented by Kessler Topaz Meltzer & Check, LLP ("Kessler Firm"), filed a complaint in the United States District Court for the Western District of Arkansas. *See Merryman et al. v. JPMorgan Chase Bank, N.A.,* No. 15-CV-5100 (TLB), Dkt. 1. The complaint asserted claims against Defendant for breach of contract, breach of the implied covenant of good faith and fair dealing, and conversion. *Id.* Defendant filed a motion to dismiss on several grounds, including lack of personal jurisdiction and failure to state a claim. Dkt. 21. On November 19, 2015, Plaintiffs' complaint was dismissed, without prejudice, for lack of personal jurisdiction. Dkt. 36. Two days later, on November 21, 2015, the Merryman Plaintiffs filed a complaint in this Court, again alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and conversion. *See Merryman et al. v. JPMorgan Chase Bank, N.A.,* No. 15-CV-9188 (VEC), Dkt. 1.

On December 8, 2015, Defendant wrote to the Court regarding *Merryman v. Citigroup, Inc. et al.*, No. 15-CV-9185 (CM) ("*Citi*"), a parallel case pending in this District. *See* Dkt. 9. Plaintiffs acknowledged the similarity between the two cases but requested that they remain separate because they "concern[ed] different defendants and a different set of agreements." Nirmul Decl., Dkt. 125 ¶ 22; Nirmul Letter, Dkt. 16. The Court did not combine or coordinate the two cases.

---

[1] The "Merryman Plaintiffs" are Benjamin Michael Merryman, Amy Whitaker Merryman Trust, and B Merryman and A Merryman 4th Generation Remainder Trust.

On January 22, 2016, JPM moved to dismiss the Complaint.  Dkt. 19.  The motion argued, among other things, that: (1) Plaintiffs' claims were barred by the Securities Litigation Uniform Standards Act ("SLUSA"); (2) Plaintiffs lacked contractual standing under the Deposit Agreements; (3) Plaintiffs lacked standing to bring claims on behalf of all JPM-sponsored ADRs; (4) Plaintiffs failed to state a claim for breach of contract; and (5) Plaintiffs' claims for breach of the implied duty of good faith and fair dealing and conversion were duplicative of the breach of contract claim.  *See* Dkt. 20.  On September 29, 2016, Defendant's motion to dismiss was granted in part and denied in part.  Dkt. 35.

On November 21, 2016, Plaintiffs filed an Amended Class Action Complaint, adding Chester County Employees Retirement Fund ("Chester County") as a plaintiff and adding claims for ADRs owned by Chester County; the Amended Complaint did not otherwise change the causes of action or theories of liability.  Dkt. 50.  Defendant again moved to dismiss, Dkt. 59, and the motion to dismiss was again granted in part and denied in part, Dkt. 68.

After months of written discovery, depositions, expert discovery, and additional negotiations, the Parties reached an agreement in principle on April 12, 2018.  *See* Nirmul Decl., Dkt. 125 Ex. 1.  The Settlement Agreement provides for $9.5 million ("Settlement Amount"), less any attorneys' fees and litigation expenses, notice and administration costs, and taxes, to be distributed to eligible Class Members according to the court-approved plan of allocation.  *Id.*; Dkt. 99.  By Order dated November 22, 2019, the Court certified a settlement class pursuant to Rule 23 of the Federal Rules of Civil Procedure and approved the parties' Settlement Agreement as fair and adequate under Federal Rule of Civil Procedure 23(e).  Dkt. 144.  The Court also approved the parties' Plan of Allocation.  Dkt. 145.

## II. DISCUSSION

1. **Applicable Law**

In Rule 23 class actions, the "attorneys whose efforts created the fund are entitled to a reasonable fee—set by the court—to be taken from the fund." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). The Second Circuit has approved two methods to calculate a reasonable attorneys' fee: the "lodestar" method and the "percentage of the fund" method. *See id.*; *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*, 396 F.3d 96, 121 (2d Cir. 2005). Under the lodestar method, the district court multiplies the reasonable number of hours billed to the class by a reasonable hourly rate. *See Goldberger*, 209 F.3d at 47. The district court may then, in its discretion, increase the lodestar by applying a multiplier based on factors such as the riskiness of the litigation and the quality of the attorneys. *Id.* at 50. Under the percentage of the fund method, class counsel is awarded a reasonable percentage of the total value of the settlement amount. *See Goldberger*, 209 F.3d at 47. Even when the percentage of the fund method is used, however, the Second Circuit "encourage[s] the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage." *Goldberger*, 209 F.3d at 50 (internal citation omitted).

Regardless of which method is used, courts rely on the "*Goldberger* factors" to determine a reasonable fee award. *Wal-Mart Stores, Inc*, 396 F.3d at 121. The *Goldberger* factors include: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . .; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50. Fee awards "should be assessed based on scrutiny of the unique circumstances of each case, and 'a jealous regard to the rights of those who are interested in the fund.'" *Id.* at 53 (internal citation

4

omitted).  What constitutes a reasonable fee "boils down to 'what a reasonable, paying client would be willing to pay,' given that such a party wishes to 'spend the minimum necessary to litigate the case effectively.'"  *Simmons v. New York City Transit Auth.,* 575 F.3d 170, 174 (2d Cir. 2009) (internal citation omitted).  Furthermore, the district court has a duty "to act as a fiduciary who must serve as a guardian of the rights of absent class members." *McDaniel v. County of Schnectady*, 595 F.3d 411, 419 (2d Cir. 2010).

### 2. Application of the Lodestar Method

Although Class Counsel's asserted lodestar creates a "presumptively reasonable fee," the Court has ultimate discretion in determining an appropriate fee award and may adjust it based on the unique circumstances of the case.  *Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 552 (2010).; *Black v. Nunwood, Inc.*, No. 13-CV-7207, 2015 WL 1958917, at *4 (S.D.N.Y. Apr. 30, 2015) (collecting cases). The lodestar may also be adjusted by a multiplier when it "does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue,* 559 U.S. at 554.

Here, Class Counsel requests one third of the settlement amount, or $3,166,666.67, based on a lodestar of $3,191,242.50.  Although the Kessler Firm suggests that it is, therefore, taking a slight haircut, Nirmul Decl., Dkt. 125 ¶¶ 146, 155, its fee request is shockingly high given the circumstances of this case.  In particular, "scrutiny of the unique circumstances" surrounding this case, namely the case's procedural history and its marked similarity to the *Citi* case, necessitates a significant reduction of the lodestar.  *See Goldberger*, 209 F.3d at 53 (holding that fee awards "should be assessed based on scrutiny of the unique circumstances of each case").  After consideration of the *Goldberger* factors and significantly recalculating Class Counsel's lodestar, the Court finds an award of $731,063.99 to be reasonable.

### a. Similarity to *Merryman v. Citigroup, Inc. et al.*

About a month after this lawsuit was first filed in Arkansas, the Merryman Plaintiffs filed an almost identical case against Citibank, also in the Western District of Arkansas. *See* 15-CV-5129 (TLB) (2015), Dkt. 1. As with the Complaint against JPM, on November 19, 2015, the Arkansas Court dismissed the *Citi* complaint for lack of personal jurisdiction, Dkt. 29, and just one day later, Plaintiffs re-filed the *Citi* complaint in this Court alleging the use of an unauthorized spread and asserting claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and conversion. *See* No. 15-CV-9185 (CM), Dkt. 1.[2] The claims and supporting factual allegations in *Citi* are virtually identical to those in the complaint against JPM. *See* No. 15-CV-9188 (VEC), Dkt. 1.[3] In fact, the cases were so similar that, as noted above, JPM submitted a letter to the Court notifying it of the existence of another case "premised on similar factual allegations." Dkt. 9. On January 28, 2016, Citi moved to dismiss Plaintiffs' complaint; its arguments were virtually identical to the arguments made by JPM in its motion to dismiss.[4] *See* Dkt. 27.

Although the Court did not consolidate the two cases, their similarities cannot be ignored when evaluating the substantive work performed and determining the reasonableness of the attorneys' fees requested. Significantly, on July 12, 2019, the Kessler Firm was awarded its requested $4,916,666.67 in legal fees and $678,434.41 in litigation expenses in the *Citi* case. 15-

---

[2] The Kessler Firm brought both the *JPM* and *Citi* actions.

[3] The *JPM* complaint was filed in New York two days after the *Citi* complaint was filed in New York, both having been dismissed by the Arkansas Court on November 19, 2015.

[4] The *Citi* motion to dismiss argued (1) Plaintiffs' claims were bared by the Securities Litigation Uniform Standards Act ("SLUSA"); (2) Plaintiffs lacked standing to bring claims on behalf of all Citibank-sponsored ADRs; (3) Plaintiffs failed to state a claim for breach of contract; and (4) Plaintiffs' claims for breach of the implied duty of good faith and fair dealing and conversion were duplicative of the breach of contract claim. *See* Dkt. 27.

CV-9185, Dkt. 163.  The Kessler Firm now requests an additional $3,166,666.67 in attorneys' fees in this case.

Despite the Court's expressed concern that, given the similarities between these two cases, there could be duplication of effort, *see* Final Approval Hr'g Tr., Dkt. 140 at 14, Class Counsel provided *no* evidence that there was not substantial duplication of effort between the work done on the two cases.  Thus, the Court evaluates the "time and labor expended by counsel" and the "magnitude and complexities of the litigation," *Goldberger*, 209 F.3d at 50, in light of the factual and legal similarities between the two cases and without the assistance of evidence from Plaintiffs to dispel the obvious concern that there was significant legal overlap between the two cases.

Because the two complaints allege similar unauthorized practices and the two motions to dismiss raised virtually identical arguments, it is incomprehensible that Class Counsel really incurred $3.1 million in fees for the *JPM* case, on top of the $3.7 million in fees allegedly incurred in the *Citi* case.[5]  Because Class Counsel has provided no evidence that there was not significant overlap in the work done in each case, and because Class Counsel has already received $4.9 million in connection with *Citi*, a significant reduction to the fee requested in this case is appropriate.  *See Custodio v. Am. Chain Link & Const., Inc.*, No. 06-CV-7148, 2014 WL 116147, at *9 (S.D.N.Y. Jan. 13, 2014) (citing *Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers,* 34 F.3d 1148, 1160 (2d Cir. 1994)) ("The party seeking attorneys' fees [] bears the burden of establishing that the number of hours for which compensation is sought is reasonable.").

---

5  As reported in *Citi* in connection with the fee application in that case, the Kessler Firm's purported lodestar in *Citi* was $3,738,965.75.  Dkt. 161.

7

### b. Purported Hours Spent on the Arkansas Complaint and Motion to Dismiss, the New York Complaint and Motion to Dismiss, and Pre-Complaint Investigation[6]

As discussed, *supra*, this case was originally filed in the Western District of Arkansas. Nirmul Decl., Dkt. 125 ¶ 17; No. 15-CV-5100 (TLB), Dkt. 1. According to Plaintiffs, Class Counsel spent 617.70 attorney hours drafting the JPM Arkansas Complaint and responding to the motion to dismiss (total fee: $354,942), having also spent 483.29 attorney hours (total fee: $271,003.75) engaged in pre-Complaint investigation.[7] *See* Nirmul Suppl. Decl., Dkt. 142 Ex. 2.[8] After the case was dismissed for lack of personal jurisdiction, the Merryman Plaintiffs re-filed the complaint in this Court. Dkt. 1. Plaintiffs admit that the complaint filed in this Court alleged claims that had been "initially asserted in the Western District of Arkansas." Nirmul Decl., Dkt. 125 ¶ 21. A review of the complaints confirms that they are nearly identical. *See* No. 15-CV-9188 (VEC), Dkt 1; No. 15-CV-5100 (TLB), Dkt. 1.

Nevertheless, Class Counsel represents that they spent another 550.10 hours of attorney time filing the New York complaint and litigating the motion to dismiss and a motion for

---

[6] The Court did not order Plaintiffs to produce original billing records but instead directed Plaintiffs to provide greater granularity than it had in its initial fee application. *See* Final Approval Hr'g Tr. at 15-16. Specifically, Plaintiffs were directed to divide the litigation into logical phases and to provide the Court with the number of hours spent by each timekeeper in each litigation phase. The phases Plaintiffs chose were: Precomplaint Investigation, Arkansas Complaint and Motion to Dismiss, New York Complaint and Motion to Dismiss/Motion for Reconsideration, Client Communication, Rule 23/Class Certification, Case Management/Case Administrator, Amended Complaint and Motion to Dismiss, Written Discovery/Third-Party Discovery, Deposition Prep/Depositions, Expert, Document Review, Settlement Negotiations and Settlement Filings, and Settlement Administration and Modified Notice. Dkt. 142 Ex. 2.

[7] The total fee, including charges by professional staff, to draft the Arkansas complaint and to respond to the motion to dismiss was $390,011.50 (738.3 hours). The total fee, including charges by professional staff, for pre-Complaint investigation was $299,535.75 (569.29 hours). Dkt. 142 Ex. 2.

[8] The Court has to conclude, given the similarity of the total purported lodestar in *Citi* with the lodestar in this case, that Plaintiffs' counsel billed similar amounts for these phases of the litigation in the *Citi* matter. (The total lodestar in *Citi* was about 17.16% higher than the lodestar here; the difference is likely the result of the parties having litigated class certification in *Citi* but not in this case.) If so, that means that the firm would have billed approximately $1 million to research and file two complaints, alleging the exact same theories, and defending essentially the same motions to dismiss. That simply does not pass the straight face test.

reconsideration (total fee: $312,012.75).[9] Class Counsel asserts that it "carefully reviewed and analyzed JPM's thirty pages of briefing and the extensive legal authority cited therein … and conducted significant legal research into JPM's arguments and its responses thereto." Nirmul Decl., Dkt. 125 ¶ 33. Although Class Counsel claims they "carefully reviewed" Defendant's brief and the "extensive legal authority cited therein," that work had presumably already been done during the 617.70 attorney hours they allegedly spent drafting and defending the same complaint in Arkansas. In fact, a significant portion of Defendant's "thirty pages of briefing" contained the exact same arguments JPM had asserted in its motion to dismiss filed in Arkansas. *See* No. 15-CV-5100 (TLB), Dkt. 21.[10] Although Class Counsel may have had to conduct some additional legal research in order to respond to the motion to dismiss filed in New York (largely to cite Second Circuit rather than Eighth Circuit law), it is incomprehensible that competent counsel really spent an additional 550.10 attorney hours drafting the same complaint and litigating the same motion to dismiss that they had just litigated in Arkansas.

Despite the undeniable similarities between the complaints in the two cases and between what was filed in Arkansas and New York, the motions to dismiss and the responses to the motion to dismiss, Class Counsel's billing records indicate that a whopping 1,651 attorney hours were spent conducting pre-complaint investigation, drafting a complaint that was filed once in Arkansas and once in New York, responding to (essentially) the same motion to dismiss twice, and drafting a meritless motion for reconsideration. *See* Nirmul Suppl. Decl., Dkt. 142 Ex. 2.

---

[9] The total fee, including charges by professional staff, for drafting the New York complaint, responding to the motion to dismiss, and making a motion for reconsideration was $322,692.75 (586.90 hours). Dkt. 142 Ex. 2.

[10] In particular, the motion to dismiss filed in this Court argued that: (1) the action was barred by SLUSA; (2) the Plaintiffs lacked standing; (3) the claims pursuant to the Chunghwa Deposit Agreement must be dismissed and arbitrated; and (4) the complaint failed to state a claim. Dkt. 20. A comparison to the motion to dismiss filed in Arkansas confirms that each of these arguments was fully briefed before Judge Brooks. No. 15-CV-5100 (TLB), Dkts. 21, 33, 35.

9

Because the majority of the work required to draft the complaint and respond to the motion to dismiss in New York had already been done in connection with the complaint filed in Arkansas, the Court finds the purported hours to be vastly inflated. Just as a private paying client would not pay for fees that are bloated beyond recognition, the Court will not award attorneys' fees for hours that are "'excessive, redundant, or otherwise unnecessary' to the litigation." *Cho v. Koam Med. Servs. P.C.,* 524 F. Supp. 2d 202, 209 (E.D.N.Y. 2007) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 434 (1983)).

This Court will reduce the hours allegedly billed as follows: the reported hours for drafting and defending the Arkansas Complaint and for pre-Complaint investigation will be reduced by 80% to a combined fee of $125,189 for 251.08 hours of attorney time; the requested hours for drafting and defending the New York complaint and moving for reconsideration will be reduced by 85% to $46,801 for 82.52 hours of attorney time.[11] *See Dial Corp. v. News Corp.,* 317 F.R.D. 426, 437 (S.D.N.Y. 2016) (awarding only two-fifths of the requested amount as original work on the basis that the remaining three-fifths of the requested fees were "presumptively multiplicative and superfluous."); *Santa Fe Natural Tobacco Co. v. Spitzer,* No. 00-CV-7274, 2002 WL 498631 at *3 (S.D.N.Y. Mar. 29, 2002) ("If a court finds that the fee applicant's claim is excessive, or that time spent was wasteful or duplicative, it may decrease or disallow certain hours or, where the application for fees is voluminous, order an across-the-board percentage reduction in compensable hours.")*; Winkler v. Metro. Life Ins. Co.,* No. 03-CV-9656, 2006 WL 2347826 at *2 (S.D.N.Y. Aug. 10, 2006) (imposing twenty percent reduction for

---

[11] The hours will similarly be reduced for professional staff; the hours allegedly billed by professional staff for the Arkansas litigation and pre-Complaint investigation will be reduced by 80% to a combined fee of $12,720.40 for 41.32 hours of professional staff time; the requested hours for drafting and defending the New York complaint and moving for reconsideration will be reduced by 85% to $1,602 for 5.52 hours of professional staff time. Thus, the total reduced hours for these three phases of the litigation (attorneys and professional staff) will be 380.44, which yields a reduced lodestar of $186,313.36.

"excessive charges and lack of delegation"). The reduction the Court is ordering is further supported by the substantive overlap between the complaints and motions to dismiss filed in the *Citi* case.[12] *See Rahman v. Smith & Wollensky Rest. Grp., Inc.,* No. 06-CV-6198, 2008 WL 1899938 at *4 (S.D.N.Y. Apr. 29, 2008) (applying thirty-three percent reduction where time entries reflected "excessive billing or duplicative work").[13]

Reducing Class Counsel's stated hours spent on the complaints, the motions to dismiss, and the pre-complaint investigation as noted yields a recalculated lodestar of $186,313.36 for those three phases of the litigation.[14] The Court acknowledges that these are significant reductions. But given the quality and complexity (*vel non*) of this case and taking into account the substantial duplication between the work done in connection with the complaints and motions to dismiss filed in Arkansas and in New York and between the *Citi* and *JPM* cases, 333.6 hours of attorney time[15] is a more than generous estimate of the hours reasonably spent on those phases of the litigation.

---

[12] The Court notes that there was significant overlap between the attorneys who worked on both cases. According to the billing records, fourteen out of the eighteen attorneys who charged time to *Citi* also charged time to *JPM*; this is further evidence that there was almost certainly duplication of effort rendering the requested fee in this case obviously unreasonable. *See* 15-CV-9188, Dkt. 125-3; 15-CV-9185, Dkt 154-3.

[13] Assuming that the hours purportedly billed in the *Citi* case were roughly the same for these tasks (a reasonable assumption because the course of two cases was essentially identical in the early phases), accepting the truth of Plaintiffs' counsel's representations would mean that the Kessler Firm spent almost 3,200 hours of attorney time getting two virtually identical complaints past the motion to dismiss phase. If that were accurate, there would be grave questions about whether the Kessler Firm is fit to be class counsel. The Court has approved the appointment of the Kessler Firm as class counsel, but it does not accept the accuracy of its representations regarding the amount of time it spent litigating this case.

[14] This number was calculated by reducing the reported hours of each attorney by the stated percentage. For example, Joseph Meltzer's purported 23.90 hours spent drafting the Arkansas motion to dismiss and Complaint were reduced by 80% to 4.78 and then multiplied by his hourly billing rate of $920 to produce a fee of $4,397.60. This recalculation was done for every attorney and professional staff member in each category.

[15] After parallel reductions, the total number of hours spent, including charges by professional staff, for these three phases of work was 380.44 hours, yielding a total fee of $186,313.36.

11

### c. The Purported Time Spent for the Remaining Phases of the Litigation

Because the purported hours spent working on the two complaints and motions to dismiss are grossly exaggerated, the Court concludes that the hours purportedly worked on the remaining phases of the litigation are equally inflated. *See* Nirmul Suppl. Decl. Ex. 2. Accordingly, the Court will reduce the hour totals in these remaining phases[16] by 75%, or to 25% of the stated total.[17] *See Kirsch v. Fleet Street Ltd.,* 148 F.3d 149, 173 (2d Cir. 1998) ("Hours that are 'excessive, redundant, or otherwise unnecessary,' are to be excluded, and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application.'" (internal citation omitted)); *Lunday v. City of Albany,* 42 F.3d 131, 134 (2d Cir. 1994) ("We do not require that the court set forth item-by-item findings concerning what may be countless objections to individual billing items.").

After reducing the hours spent on the remaining phases of work to 25% of the asserted totals, the lodestar for those phases becomes $544,750.63.[18] Thus, Class Counsel's total recalculated lodestar is $731,063.99.

---

[16] The "remaining phases" include: Client Communication, Rule 23/Class Certification, Case Management/Case Administrator, Amended Complaint and Motion to Dismiss, Written Discovery/Third-Party Discovery, Deposition Prep/Depositions, Expert, Document Review, Settlement Negotiations and Settlement Filings, and Settlement Administration and Modified Notice. *See* Nirmul Decl. Ex. 2.

Discussion of time purportedly spent on two other phases of the litigation further reinforces the appropriateness of significant across the board reductions to the number of hours considered as part of the lodestar. Class Counsel asserts that it spent 778.50 attorney hours negotiating the settlement and preparing the settlement filings and the motion for modification of the notice requirements. While there was some complexity to the settlement, it is not credible that almost 800 hours of attorney time were spent finalizing the settlement in this case.

[17] The Court is imposing a slightly lower reduction to these phases of the litigation as compared to the phases discussed above because after the motions to dismiss were litigated, there were some differences in the path of litigation between *JPM* and *Citi*.

[18] Because the Court is reducing the hours that will be considered as part of the lodestar, the Court will not also reduce the hourly rates charged. The current hourly billing rates for the attorneys who worked on this matter range from $920 to $325; the current hourly billing rates for the professional staff who worked on this matter range

### d. Multiplier

Courts may, in their discretion, increase the lodestar by applying a multiplier based on factors such as the riskiness of the litigation and the quality of the attorneys. *Goldberger*, 209 F.3d at 47; *Wal–Mart*, 396 F.3d at 121. The Court acknowledges that Class Counsel devoted over three years to this case with no compensation and expended substantial effort to achieve the settlement. Class Counsel, however, was generously compensated in the *Citi* case, and as explained *supra*, much of the work done in this case was a duplicate of work done in *Citi*. Had Plaintiffs' counsel presented this bill to a rational paying client, the client would surely have considered the fact that his attorneys had already been richly compensated before cutting them another check for much of the same work. The risks of this litigation were compensated in *Citi*; Counsel is not entitled to twice the compensation for pursuing the same case against a different bank. Accordingly, the Court will not apply a multiplier in this case.

### 3. Litigation Expenses

Class Counsel also seeks reimbursement of $264,680.05 in litigation expenses. Class Counsel's expenses include costs for experts, travel expenses, court reporters, external and internal reproduction costs, document hosting, teleconferences, postage and express mail, service of process, court fees, and messenger service. *See* Nirmul Suppl. Decl. ¶¶ 8-17. Counsel is entitled to reimbursement of reasonable litigation expenses from the settlement fund when the

---

from $450 to $250. Although those rates will not be adjusted, the Court notes that they are somewhat higher than a rational paying client would pay for a law firm not located in a major metropolitan area. (The Kessler firm is located in Radnor, Pennsylvania, which is outside of Philadelphia.) *See e.g. In re Avandia Mktg., Sales Practices & Prod. Liab. Litig*., No. 07-MD-01871, 2012 WL 6923367, at *10 (E.D. Pa. Oct. 19, 2012) (noting that partners at Philadelphia-based firms bill up to $900); *In re Budeprion XL Mktg. & Sales Litig.*, No. 09-MD-2107, 2012 WL 2527021, at *23 (E.D. Pa. July 2, 2012) (approving rates between $225 to $700 for lead counsel and partners and $200 to $400 for associates); *Chakejian v. Equifax Info. Servs., LLC,* 275 F.R.D. 201, 216–17 (E.D. Pa. 2011) (accepting rates of $485 to $700 for partners and $125 to $175 for paralegals); *Reibstein v. Rite Aid Corp.,* 761 F. Supp. 2d 241, 260 (E.D. Pa. 2011) (approving rates of $650 for partners and $175–$225 for paralegals in a consumer class action litigation).

expenses are "necessary and were directly related to the results achieved." *Siddiky v. Union Square Hospitality Group, LLC,* No. 15-CV-9705, 2017 WL 2198158, at *12 (S.D.N.Y. 2017); *see, e.g., Fleisher v. Phoenix Life Ins. Co.*, Nos. 11-CV-8405, 14-CV-8714, 2015 WL 10847814, at *23 (S.D.N.Y. Sept. 9, 2015); Fed. R. Civ. P. 23(h).

### a. Expert Expenses

Class counsel retained two experts in this case; 8Rivers Capital to prepare a damages methodology and calculate class-wide damages and HF Media, LLC to design the modified class notice program. Nirmul Suppl. Decl. ¶¶ 15-17. Class Counsel requests $167,400 for 8Rivers's fee and $7,560.60 for HF Media, LLC's fee, totaling $174,960.60. With respect to 8Rivers' fee, the Court explicitly directed Class Counsel to explain whether the requested amount accounted for the inevitable overlap between the work performed by 8Rivers in this case and its work in *Citi*. *See* Final Approval Hr'g Tr. at 17-18. Because Class Counsel did not even attempt to show that there was not substantial duplication of the expert's work between these two cases, the Court reduces the requested amount by 75%.[19] Accordingly, the Court awards $41,850 as reimbursement for work performed by 8Rivers and $7,560.60 for work done by HF Media, LLC, totaling $49,410.60 in reimbursement for expert expenses.

### b. Travel Expenses

Class Counsel seeks reimbursement of $16,536.21 in travel expenses. Nirmul Suppl. Decl. ¶¶ 8-9. This amount is unreasonably high. Specifically, the Court finds Class Counsel's caps, particularly $500 per night for lodging, $20 per person for breakfast, and $50 per person

---

[19] The Kessler firm has already been reimbursed for work 8Rivers did in the *Citi* case. It seems likely, however, that at least 25% of 8Rivers' work was unique to the JPM ADRs.

for dinner, to be too generous.[20] *See* Nirmul Suppl. Decl. ¶ 8. Class Counsel also fails to indicate whether it has a policy prohibiting its attorneys from charging alcohol to the client.[21] Lastly, Class Counsel provides inadequate detail regarding the expenses incurred during the six depositions taken in New York. *See id.* For example, Class Counsel fails to indicate how many attorneys attended the depositions or how long any of them stayed in New York. Without those details, the Court cannot assess whether Class Counsel's requested expenses are reasonable.

For these reasons, the Court reduces the requested travel expenses by 20%. Accordingly, the Court awards $13,228.97 in travel expenses.

c. **Remaining Expenses**

Class Counsel requests $16,129.78 for the cost of online legal and factual research. Nirmul Suppl. Decl. ¶¶ 11-14. Counsel argues that it is more efficient to conduct computerized research than not to, and cites *Wise v. Kelly*, 620 F. Supp. 2d 435, 456 (S.D.N.Y. 2008), in support of its argument that the greater efficiency justifies charging such costs to the class rather than absorbing them as part of the law firm's overhead. Nirmul Suppl. Decl., Dkt. 142 ¶ 14.

The Court would note that it is also more efficient for attorneys to type their briefs into a word processing program like Word than it is to draft a brief in longhand and then have a secretary type it on a manual typewriter, as was common legal practice until sometime in the 1980s. The fact that using personal computers and word processing programs is more efficient

---

[20] By way of comparison, the government per diem in New York City for 2019 set a maximum per diem for breakfast at $18 and a maximum for dinner at $34. The total government meals per diem in 2019 was $71.00, or almost 25% less than Plaintiffs' counsel's policy.

[21] Counsel explained that its travel policy is to keep "expenses at a reasonable level." Dkt. 124 at 22. That may be true, but its policy on alcohol seems rather lackadaisical. According to the fee application, only if it is evident from a receipt that alcohol was consumed with a meal will those charges not be included in the expenses for which Class Counsel seeks reimbursement. Nirmul Suppl. Decl. ¶ 8, n.5. That is a far cry from a rigorous policy. To be clear, the Court has no qualms with attorneys imbibing at dinner, but it is not reasonable to pass those expenses on to the client.

than an alternative does not mean that it would be appropriate to charge the class for the pro rata cost of putting a PC loaded with Word onto every timekeeper's desk.  That expense is part of the firm's overhead; so too is the cost of accessing and using services like Westlaw, LexisNexis, and PACER.  *See Melito v. Am. Eagle Outfitters, Inc.*, No. 14-CV-2440, 2017 WL 3995619, at *20 (S.D.N.Y. Sept. 11, 2017).  The Court notes that the charges for TransUnion Risk & Alternative Data Solutions Inc., a database which does not appear to be the sort of database that would logically be part of a law firm's overhead, would have been reimbursable had Class Counsel bothered to separate out the precise amounts incurred for use of that database.  Because Counsel failed to do so, despite the Court putting them on notice that it might not allow reimbursement for computerized legal research services, all of the costs for these expenses will be disallowed.

Class Counsel's request for $1,133.00 in court fees is reasonable; those costs will be allowed.  Nirmul Suppl. Decl. ¶ 10.

In sum, the Court awards $63,772.57 as reimbursement for expert expenses, travel expenses, and court fees.

### 4. Service Awards

Incentive awards are "not uncommon in class action cases and are within the discretion of the court."  *In re AOL Time Warner ERISA Litig.*, No. 02-CV-8853, 2007 WL 3145111, at *2 (S.D.N.Y. Oct. 26, 2007) (citation omitted).  Courts "look for the existence of 'special circumstances'" in determining whether and how much to award class representatives.  *Id.* Courts often consider the "personal risk" incurred by the plaintiff as well as the time and effort expended in assisting the "prosecution of the litigation, or in bringing to bear added value." *Roberts v. Texaco*, 979 F. Supp. 185, 187, 200 (S.D.N.Y. 1997).

Class Counsel requests Service Awards of $2,500 each to the Merryman Plaintiffs and Chester County.  The Merryman Plaintiffs received $20,000 from the *Citi* Settlement Agreement, *see* No. 15-CV-9185 (CM), Dkt. 163.  It is difficult to believe that any incremental work done by them in this case warrants an additional $2,500.  As a result, the Court awards nothing to the Merryman Plaintiffs.  The Court awards the requested $2,500 to Chester County, which also received a service award of $2,500 in the *Citi* case.

### III.   CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Attorneys' Fees and Litigation Expenses is GRANTED in part and DENIED in part.  Class Counsel is hereby awarded attorneys' fees of $731,063.99 and reimbursement of expenses in the sum of $63,772.57.  The court awards a service fee of $2,500 to Chester County.  The Clerk of Court is respectfully directed to close the motion at Docket No. 123.

**SO ORDERED.**

Date:  **November 22, 2019**
       **New York, NY**

_____
**VALERIE CAPRONI**
**United States District Judge**