# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BENJAMIN MICHAEL MERRYMAN, AMY WHITAKER MERRYMAN TRUST, B MERRYMAN AND A MERRYMAN 4TH GENERATION REMAINDER TRUST AND CHESTER COUNTY EMPLOYEES RETIREMENT FUND, individually and on behalf of all others similarly situated,<br><br>                  Plaintiffs,<br><br>                  v.<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>                  Defendant. | CIVIL ACTION NO. 1:15-cv-09188-VEC |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED**
<u>**MOTION FOR APPROVAL OF DISTRIBUTION PLAN**</u>

**TABLE OF CONTENTS**

| | | Page |
|---|---|---|
| I. | BACKGROUND ON THE SETTLEMENT | 1 |
| II. | THE NET SETTLEMENT FUND | 3 |
| III. | CLAIMS ADMINISTRATION | 4 |
| IV. | ADMINISTRATIVE DETERMINATIONS FOR CLAIMS | 5 |
| | A. Claims Recommended for Acceptance | 5 |
| | B. Claims Recommended for Rejection | 6 |
| V. | FEES AND EXPENSES OF THE CLAIMS ADMINISTRATOR | 7 |
| VI. | DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND | 8 |
| VII. | RELEASE OF CLAIMS | 9 |
| VIII. | RECORD RETENTION AND DESTRUCTION | 10 |
| IX. | CONCLUSION | 11 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Guevoura Fund Ltd. v. Sillerman*,
    2021 WL 21981 (S.D.N.Y. Jan. 4, 2021) ..................................................................................10

*Rosi V. Aclaris Therapeutics, Inc.*,
    2022 WL 4093144 (S.D.N.Y. Sept. 7, 2022)............................................................................10

*In re Sunedison, Inc. Sec. Litig.*,
    2020 WL5038001 (S.D.N.Y. Aug. 26, 2020)...........................................................................10

*In re The Bank of New York Mellon ADR FX Litig.*,
    2021 WL 2709294 (S.D.N.Y. July 1, 2021) ............................................................................10

*Wilson v. LSB Indus., Inc.*,
    2020 WL 5628039 (S.D.N.Y. Sept. 21, 2020).........................................................................10

Plaintiffs Benjamin Michael Merryman, Amy Whitaker Merryman Trust, B Merryman and A Merryman 4th Generation Remainder Trust and Chester County Employees Retirement Fund (collectively, "Plaintiffs"), by and through their counsel Kessler Topaz Meltzer & Check, LLP ("Lead Counsel"), hereby submit this memorandum in support of their unopposed motion for an Order, pursuant to Federal Rule of Civil Procedure 23(e), approving the plan for distributing the Net Settlement Fund to eligible Settlement Class Members ("Distribution Plan") as set forth in the accompanying Declaration of Lance Cavallo in Support of Plaintiffs' Motion for Approval of Distribution Plan ("Cavallo Declaration"), submitted on behalf of the Court-authorized Claims Administrator, Kurtzman Carson Consultants, LLC ("KCC").[1]

## I.    BACKGROUND ON THE SETTLEMENT

Plaintiffs, on behalf of themselves and the Settlement Class,[2] and JPMorgan Chase Bank, N.A. ("Defendant" or "JPM" and, together with Plaintiffs, the "Settling Parties") entered into the Stipulation wherein the Settling Parties agreed, in substance, that in exchange for consideration of $9,500,000 in cash, there would be a full and complete settlement of all Released Claims (as defined in ¶ 1(ee) of the Stipulation) against JPM and the other Released Defendant Parties (as defined in ¶ 1(gg) of the Stipulation).

---

[1]    Unless otherwise defined, all capitalized terms herein have the same meanings set forth in the accompanying Cavallo Declaration or in the Stipulation and Agreement of Settlement previously filed with the Court (ECF No. 99) ("Stipulation").

[2]    The Settlement Class consists of "all Persons or entities who are or were holders (directly or indirectly, registered or beneficially) of or otherwise claim any entitlement to any payment (whether a dividend, rights offering, interest on capital, sale of shares or other distribution) in connection with, (1) the securities listed in Appendix 1 to [the Stipulation] (including any predecessor or successor securities) from November 21, 2010 to [July 18, 2018], inclusive; or (2) the securities listed in Appendix 2 to [the Stipulation] (including any predecessor or successor securities) from November 21, 2012 to [July 18, 2018], inclusive." ECF No. 99 ¶ 1(mm).

By its Order Preliminarily Approving Settlement and Providing for Notice (ECF No. 104) ("Preliminary Approval Order") and subsequent Order Approving Modifications to Notice Plan and Schedule for Approval of Settlement (ECF No. 118) ("Notice Modification Order"), the Court directed that the Postcard Notice be mailed by first-class mail to Registered Holder Settlement Class Members at the addresses set forth in the records of JPM's transfer agent.[3] The mailing was conducted in accordance with the Preliminary Approval Order and Notice Modification Order. As set forth in the Cavallo Declaration, KCC mailed approximately 728,000 Postcard Notices to Registered Holder Settlement Class Members. Cavallo Decl. ¶ 7. The Postcard Notice informed Registered Holder Settlement Class Members that they did not need to take any additional action in order to be considered for payment; however, they could amend or supplement their holding and distribution information provided by JPM's transfer agent if they believed the information contained on the Claim Portal was incorrect or incomplete. *Id.* ¶ 28.

Also pursuant to the Notice Modification Order, the Court directed a publication notice campaign, consisting of banner and search advertisements and publications in various newspapers and magazines, in order to provide notice to Non-Registered Holder Settlement Class Members. The publication notice campaign provided basic information regarding the Settlement and directed Non-Registered Holder Settlement Class Members to www.JPMorganADRFXSettlement.com for more information. *Id.* ¶ 8. Non-Registered Holder Settlement Class Members were advised that if they wished to be potentially eligible to receive a distribution from the Settlement, they were required to complete and submit a Claim to KCC postmarked, or submitted online, no later than September 19, 2019. *Id.* ¶ 12. In addition, given the uniqueness of this administration – *e.g.*, two

---

[3]   Each Postcard Notice contained a unique Claim Number and PIN allowing Registered Holder Settlement Class Members to access their relevant holding and cash distribution information via a portal contained on the website www.JPMorganADRFXSettlement.com.

class periods that span between six and eight years, 54 separate eligible securities, and the requirement of providing cash distribution amounts (not purchases, sales, and holdings) for calculating losses, KCC, at the outset of the administration, sent emails to the largest and most common third-party filers ("Third Party Filers") for which it had email addresses, advising the Third Party Filers of the unique requirements for this Settlement and providing contact information in case they had any questions. *Id.* ¶¶ 24-25.

On October 15, 2019, the Court held a hearing to consider, among other things, whether the proposed Settlement should be granted final approval. By its Order and Final Judgment (ECF No. 144) ("Judgment"), the Court: (i) approved the Settlement provided for in the Stipulation, finding it fair, reasonable, and adequate to the Settlement Class; (ii) found the notice procedures to be proper; and (iii) dismissed with prejudice the claims asserted against Defendant in the Litigation. By its Order Approving Plan of Allocation of Net Settlement Fund (ECF No. 145), the Court approved Plaintiffs' proposed plan for allocating the Settlement proceeds among eligible Settlement Class Members ("Plan of Allocation").

Pursuant to paragraphs 28 and 39 of the Stipulation, the Effective Date of the Settlement has occurred and the Net Settlement Fund may be distributed to Authorized Recipients. Accordingly, pursuant to paragraph 28 of the Stipulation, Plaintiffs respectfully request the Court to enter the [Proposed] Order Approving Distribution Plan ("Distribution Order").[4]

## II. THE NET SETTLEMENT FUND

As set forth in the Stipulation, the Settlement Amount (i.e., $9,500,000) has been deposited into an interest-earning escrow account established by Lead Counsel ("Escrow Account"). In total,

---

[4] The Court retained continuing and exclusive jurisdiction over, among other things, the disposition of the Settlement Fund and any motion to approve distribution of the Net Settlement Fund to Authorized Recipients. *See* Judgment, ¶ 15.

3

$218,538.12 in income has been earned on the Settlement Amount. In addition, the following amounts have been paid from the Escrow Account: (i) $1,146,434.70 in Notice and Administration Costs;[5] (ii) $6,024.35 in Taxes; and (iii) $797,336.56 in Court-awarded attorneys' fees and expenses.[6] As of January 23, 2023, the balance of the Escrow Account was $7,768,742.51.

## III.  CLAIMS ADMINISTRATION

All Claims for the Settlement, as well as all supplemental submissions from Registered Holder Settlement Class Members, received by KCC through January 20, 2023 have been fully processed in accordance with the Stipulation and the Court-approved Plan of Allocation set forth in the Notice. Cavallo Decl., ¶ 4.[7] KCC has responded in a prompt manner to all inquiries regarding the Litigation, the Settlement, and the procedures for supplementing, completing, and submitting Claims, and has worked with Settlement Class Members throughout this administration to help them perfect their Claims. *See generally id*. ¶¶ 30-39.

As discussed in the Cavallo Declaration, many of the Claims submitted in connection with the Settlement were initially deficient or ineligible for one or more reasons, including being incomplete, not signed, or not properly documented, which required follow-up work by KCC. *Id*. For the Claims that were determined to be deficient or ineligible, KCC mailed a notice (or sent an

---

[5] Of the total $1,146,434.70 in Notice and Administration Costs paid to date, $296,381.70 was paid to KCC for printing and postage expenses incurred in connection with mailing the Postcard Notices and Notice Packets (*see* Cavallo Decl., ¶ 51) and $850,053.00 was paid to HF Media, LLC (Heffler Claims Group) for the publication notice campaign. Under the terms of the Stipulation, Lead Counsel was permitted to pay from the Escrow Account actually incurred Notice and Administration Costs without further order of the Court or approval by Defendant. *See* Stipulation, ¶ 16; Preliminary Approval Order, ¶ 22.

[6] Pursuant to its Opinion and Order (ECF No. 146), the Court awarded $731,063.99 as attorneys' fees, and $63,772.57 in expenses. In addition, the Court awarded $2,500 as a service award to Chester County in connection with its representation of the Settlement Class.

[7] Claims received (or adjusted) after the date of the Cavallo Declaration (i.e., January 20, 2023) will be eligible to participate in subsequent distributions of the Net Settlement Fund subject to the provisions of ¶¶ 52(c) and 52(d) of the Distribution Plan set out in the Cavallo Declaration.

4

email in the case of Electronic Claims) to the Claimant describing the defects in, or the ineligibility of, their Claim and advising what, if anything, was necessary to complete the Claim. *Id*. ¶¶ 31, 33.[8] These notices/emails advised Claimants that they were required to submit the appropriate information and/or documentary evidence to complete their Claim(s) within twenty (20) days from the date of the notice/email or their Claim(s) would be recommended for rejection to the extent the deficiency(ies) or condition(s) of ineligibility were not cured. *Id*.

In addition to advising of what was required to cure the Claim(s), the notices/emails advised Claimants of their right to request the Court's review of their Claim(s) if they contested KCC's administrative determination to reject their Claim(s) in whole or in part. *Id*. ¶ 35. During this administration, KCC did not receive a single request for Court review. *Id*.

Throughout this administration, KCC spent considerable time addressing deficient and ineligible Claims and assisting Claimants in curing the deficiencies in their Claims in order to be eligible to participate in the Settlement. *See generally id*. ¶¶ 30, 36-39. As a result of KCC's efforts, many Claimants who submitted Claims with curable deficiencies were able to properly complete their Claims and are now eligible to participate in the Settlement and receive a payment from the Net Settlement Fund.

## IV. ADMINISTRATIVE DETERMINATIONS FOR CLAIMS

### A. Claims Recommended for Acceptance

As set forth in the Cavallo Declaration, a total of 2,507,031 Claims (1,804,463 Claims from Non-Registered Holder Settlement Class Members and 702,568 Claims from Registered Holder

---

[8] Sample notices are attached as Exhibit A to the Cavallo Declaration. Portions of Exhibit A have been redacted to protect Claimants' confidential personal information. *Id*. ¶ 31, n.5. For Electronic Claims, KCC emailed Claimants to notify them of any deficiencies in or the ineligibility of their Electronic Claims. These emails included spreadsheets containing the status information for *all* Claims submitted by the filer. *Id*. ¶ 33.

Settlement Class Members) were received and processed by KCC in connection with the Settlement through January 20, 2023. Cavallo Decl., ¶¶ 12, 28, 48. Of the total Claims received, 1,219,549 Claims have been provisionally accepted by KCC. *Id*. ¶¶ 48, 50; *see also* Exs. B-1 and B-2 (listing all accepted Claims and their Recognized Claim amounts, in Claim number order). Of the 1,219,549 Claims being recommended for acceptance and approval by the Court, 233,591 Claims were submitted after the postmark deadline set forth in the Postcard Notice/Notice (i.e., September 19, 2019), but were received by KCC on or before January 20, 2023. Cavallo Decl., ¶ 40. Although these 233,591 Claims were submitted late, they were received while the processing of timely Claims was ongoing and their processing did not delay the completion of this administration. *Id*. Accordingly, Lead Counsel believes that it would be appropriate to allow these Late But Otherwise Eligible Claims to share in the Net Settlement Fund.[9]

The total Recognized Claims for the 1,219,549 Claims being recommended for acceptance is $25,569,714.56 ($21,757,405.11 for the Timely Eligible Claims listed on Exhibit B-1 to the Cavallo Declaration and $3,812,309.45 for the Late But Otherwise Eligible Claims listed on Exhibit B-2 to the Cavallo Declaration). *Id*. ¶ 50. Lead Counsel respectfully requests that the Court approve KCC's administrative determinations with respect to the Claims being recommended for acceptance as listed on Exhibits B-1 and B-2 to the Cavallo Declaration.

### B.     Claims Recommended for Rejection

Of the total Claims received by KCC through January 20, 2023, 1,287,482 Claims are being recommended for rejection. Cavallo Decl., ¶ 48; *see also* Ex. B-3 to the Cavallo Declaration

---

[9]     It is within the Court's discretion to allow late submitted Claims. Pursuant to ¶ 11 of the Preliminary Approval Order: "*[u]nless the Court orders otherwise*, all Claim Forms must be postmarked no later than one hundred fifty (150) calendar days after the Notice Date. Notwithstanding the foregoing, Lead Counsel may, at its discretion, accept for processing late Claims provided such acceptance does not delay the distribution of the Net Settlement Fund to Authorized Recipients." (emphasis added).

(listing all Claims being recommended for rejection and the reasons for rejection, in Claim number order). The 1,287,482 Claims being recommended for rejection were determined to be ineligible for the following reasons: (i) 1,104,269 Claims did not result in a Recognized Claim pursuant to the Court-approved Plan of Allocation; (ii) 181,001 Claims were replaced (i.e., Claims re-submitted by Electronic Claim filers to correct issues with the data initially presented); (iii) 1,802 Claims were withdrawn by the Claimant; (iv) 178 Claims had uncured deficiencies; (v) 175 Claims were duplicates of Claims previously submitted; and (vi) 57 Claims did not fit the definition of the Settlement Class (i.e., these Claims did not reflect any eligible cash distributions during the relevant time periods). Cavallo Decl., ¶ 48. Lead Counsel respectfully requests that the Court approve KCC's administrative determinations with respect to the Claims being recommended for rejection as listed on Exhibit B-3 to the Cavallo Declaration.

## V.  FEES AND EXPENSES OF THE CLAIMS ADMINISTRATOR

In accordance with KCC's agreement with Lead Counsel to act as the Claims Administrator for the Settlement, KCC was responsible for, among other things, disseminating notice of the Settlement to the Settlement Class, creating and maintaining websites and a toll-free telephone hotline dedicated to the Settlement, processing the voluminous amount of Claims for the Settlement, and allocating and distributing the Net Settlement Fund to Authorized Recipients.

As set forth in the accompanying Cavallo Declaration, KCC has been paid a total of $296,381.70 from the Settlement Fund to date for its work in connection with the Settlement. Cavallo Decl., ¶ 51. KCC has outstanding fees and expenses of $897,468.75 and expects to incur $317,330.00 to conduct the Initial Distribution (*see* Ex. C-2 to Cavallo Declaration). *Id.*[10]

---

[10] KCC's estimate to conduct the Initial Distribution is based on the actual fees and expenses incurred in connection with the distribution of the settlement proceeds obtained in the related ADR FX case also administered by KCC, *In re: The Bank of New York Mellon ADR FX Litigation*, No. 16-CV-00212-JPO-JLC (S.D.N.Y.). Should the estimated fees and expenses set forth in Exhibit

7

Lead Counsel respectfully requests that the Court approve payment of KCC's outstanding fees and expenses as well as the fees and expenses KCC expects to incur to conduct the Initial Distribution and direct payment of this amount (i.e., $1,214,798.75) to KCC prior to the Initial Distribution of the Net Settlement Fund.

## VI. DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND

The Net Settlement Fund is ready to be distributed at this time. Lead Counsel, therefore, respectfully requests the Court enter an order approving KCC's determinations concerning the acceptance and rejection of the Claims received through January 20, 2023 and approving the Distribution Plan set forth in the Cavallo Declaration. If KCC's administrative determinations are approved by the Court, each of the Authorized Recipients will receive their *pro rata* share of the Net Settlement Fund based on his, her, or its Recognized Claim calculated pursuant to the Plan of Allocation compared to the total Recognized Claims of all Authorized Recipients. Cavallo Decl., ¶ 52(a)(i). As set forth in the Court-approved Plan of Allocation, if an Authorized Recipient's distribution amount calculates to less than $1.00 it will not be included in the calculation and no distribution will be made to such Authorized Recipient. *Id.* ¶ 52(a)(ii).

It is expected that not all of the checks sent to the Authorized Recipients will be cashed promptly and some of these checks will remain uncashed.[11] Following the Initial Distribution, and after Lead Counsel and KCC have made reasonable and diligent efforts to have Authorized Recipients negotiate their distribution checks, any balance remaining in the Net Settlement Fund

---

C-2 exceed the actual cost to conduct the Initial Distribution, KCC shall return the excess to the Settlement Fund, and such returned amounts will be available for subsequent distributions of the Net Settlement Fund to Authorized Recipients. Cavallo Decl., ¶ 51.

[11]   In order to encourage Authorized Recipients to promptly deposit their payments, the Distribution Order sets forth that all Initial Distribution checks state: "CASH PROMPTLY. VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT CASHED 90 DAYS AFTER ISSUE DATE." Cavallo Decl., ¶ 52(a)(iv).

8

(whether by reason of uncashed checks or otherwise) nine (9) months after the Initial Distribution, or as reasonably soon thereafter, will, if cost-effective to do so, be re-distributed, after payment of any unpaid fees and expenses incurred in administering the Settlement, including for such re-distribution, to Authorized Recipients who cashed their Initial Distribution checks and who would receive at least $1.00 from such re-distribution. *Id*. ¶ 52(b).

Additional re-distribution(s) to Authorized Recipients who have cashed their prior checks and who would receive at least $1.00 on such additional re-distribution(s) may occur thereafter if Lead Counsel, in consultation with KCC, determines that additional re-distribution(s), after the deduction of any additional fees and expenses incurred in administering the Settlement, including for such re-distribution(s), would be cost-effective. *Id*. ¶ 52(c). At such time as it is determined that further re-distribution of the funds remaining in the Net Settlement Fund is not cost-effective, Lead Counsel requests that, in its discretion, it may process and pay any Claims received (or adjusted) after January 20, 2023, their distribution amounts or additional distribution amounts on a *pro rata* basis, to the extent that funds are available, that would bring these Claimants into parity with other Authorized Recipients that have cashed all their prior distribution checks. *Id*. ¶¶ 52(c), 52(d). Otherwise, any remaining balance, after payment of any unpaid fees and expenses incurred in administering the Settlement, shall be contributed to a nonsectarian charitable organization selected by the Court upon application by the Settling Parties. *Id*. ¶ 52(c).

### VII. RELEASE OF CLAIMS

In order to allow for the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund beyond the amount allocated to Authorized Recipients, and to provide that all persons and entities involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted in connection with the Settlement of this Litigation, or who are otherwise involved in the

administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from any and all claims arising from such involvement. Accordingly, Lead Counsel respectfully requests this Court release and discharge all persons and entities who are involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted in connection with the Settlement of this Litigation, or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund from any and all claims arising out of such involvement, and, pursuant to the release terms of the Settlement, bar all Settlement Class Members, whether or not they are to receive payment from the Net Settlement Fund, from making any further claim against the Net Settlement Fund or the parties released pursuant to the Settlement beyond the amount allocated to them by the Settlement as approved by the Court.[12]

## VIII. RECORD RETENTION AND DESTRUCTION

Lead Counsel respectfully requests that the Court authorize KCC to destroy paper copies of Claims and all supporting documentation one (1) year after the final distribution date of the Net

---

[12] Similar language has been routinely approved by courts in this Circuit in connection with the distribution of settlement proceeds, including in the related ADR FX settlements. *See* Order, *Merryman et al. v. Citigroup, Inc. et al.*, No. 1:15-cv-09185-CM-KNF (S.D.N.Y. Oct. 11, 2022), ECF No. 170. ("all persons and entities involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted in connection with the Settlement of this Action, or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund are released and discharged from any and all claims arising out of such involvement, and, pursuant to the release terms of the Settlement, all Class Members, whether or not they are to receive payment from the Net Settlement Fund, are barred from making any further claims against the Net Settlement Fund or the parties released pursuant to the Settlement beyond the amount allocated to them pursuant to this Order"); *See also e.g., In re The Bank of N.Y. Mellon ADR FX Litig.*, 2021 WL 2709294, at *3 (S.D.N.Y. July 1, 2021); *Rosi v. Aclaris Therapeutics, Inc.*, 2022 WL 4093144, at *2 (S.D.N.Y. Sept. 7, 2022); *Guevoura Fund Ltd. v. Sillerman*, 2021 WL 21981, at *2 (S.D.N.Y. Jan. 4, 2021); *Wilson v. LSB Indus., Inc.*, 2020 WL 5628039, at *2 (S.D.N.Y. Sept. 21, 2020); *In re SunEdison, Inc. Sec. Litig.*, 2020 WL5038001, at *3 (S.D.N.Y. Aug. 26, 2020).

Settlement Fund and all electronic copies of the same three (3) years after the final distribution date of the Net Settlement Fund. Cavallo Decl., ¶ 52(e).

## IX. CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court approve their Motion for Approval of Distribution Plan and enter the [Proposed] Order Approving Distribution Plan.

Dated: January 24, 2023

Respectfully Submitted,

**KESSLER TOPAZ MELTZER & CHECK, LLP**

*S/Sharan Nirmul*
Sharan Nirmul
Ethan J. Barlieb
Jonathan F. Neumann
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
snirmul@ktmc.com
ebarlieb@ktmc.com
jneumann@ktmc.com

*Counsel for Plaintiffs and the Settlement Class*